Alan BANNISTER, Appellant,

v.

**Bill ARMONTROUT; Attorney General of the State of Missouri, Appellees.**

**No. 92–2476.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1992.

Decided Sept. 24, 1993.

Christopher Schneider, Kansas City, MO, argued (Bruce E. Baty, on brief), for appellant.

Stephen D. Hawke, Jefferson City, MO, argued, for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Alan Bannister was convicted of capital murder and sentenced to death for the murder of Darrell Reustman. His conviction and sentence were affirmed on direct appeal. *State v. Bannister,* 680 S.W.2d 141, 147 (Mo. 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). His motions for post-conviction relief were denied. *Bannister v. State,* No. 70715 (Mo. Sept. 1, 1988) (order); *Bannister v. State,* 726 S.W.2d 821 (Mo.Ct.App.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987). Bannister now appeals a judgment of the district court[1] denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. *Bannister v. Armontrout,* 807 F.Supp. 516 (W.D.Mo.1991). We affirm.

We first address Bannister's fifth and sixth amendment challenges to an August 23, 1982 interrogation. The relevant facts are as follows.

Reustman lived in a trailer park in Springfield, Missouri with Linda McCormick. Around 10:00 p.m. on August 21, 1982, Reustman answered a knock at the front door of the trailer. After Reustman opened the door, he was shot in the head. Reustman died a short time later, without identifying his assailant. Although McCormick was in the trailer at the time of the shooting, she was in the back and did not see who shot

Reustman. However, McCormick and others had seen Bannister around the trailer earlier in the evening.

Around 5:15 a.m. on August 22, 1982, police officers arrested Bannister at a Joplin, Missouri bus station. After the officers read Bannister his *Miranda*[2] rights, Bannister told them he would wait to talk to an attorney. The officers took Bannister to the Joplin city jail, where they again advised him of his *Miranda* rights. He again refused to talk and said he wanted to talk to an attorney. However, as the officers discussed going to a nearby motel to determine if Bannister had registered there, Bannister volunteered that he had registered under an alias.

While Bannister was being transported to the county jail, he asked officer Marshall Matthews about the criminal charges and the penalties. Matthews told Bannister he was being charged with capital murder and that the penalty was death or life imprisonment. Bannister asked what the penalty would be for a reduced charge. When the police car pulled onto the jail parking lot, Bannister stated he should have "stuck to [his] own profession." When Matthews asked what it was, Bannister replied "robbing banks. I never got caught." Matthews told Bannister that the Federal Bureau of Investigation (FBI) would be interested in talking to him and Bannister asked if the FBI would be involved in the investigation.

On entering the jail, Bannister told Matthews he would like to talk to the person in charge. Matthews took Bannister to Sheriff Joe Abramowitz. At that time, Abramowitz did not want to talk to Bannister, but advised him it would be in his best interest to cooperate.

At 10:30 a.m. the next day, August 23rd, Bannister met with Abramowitz and officers Don Richardson and Bob Barnett. After being read his *Miranda* rights, Bannister stated he understood his rights and wanted to talk. Bannister then signed a waiver form. Bannister told the officers that he had

---

**1.** The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

been living in Peoria, Illinois with Rick Wooten and that Wooten had asked him if he would like to make some money killing a man. Wooten explained that McCormick's husband wanted Reustman killed and would pay $4,000.00. Bannister agreed and Wooten gave him a $1,500.00 down payment, a gun, a bus ticket, and a slip of paper with Reustman's name and address.

After the officers had shown Bannister a gun they had recovered from a field near Reustman's trailer, Bannister agreed to take them back to the field to search for additional evidence. En route to the field, Bannister showed the officers a vacant house where he had test-fired the gun. At the field, Bannister directed the officers to the torn-up slip of paper with Reustman's name and address and live ammunition.

Before trial, Bannister moved to suppress his statements. On October 25, 1982, Bannister, who was represented by a public defender, testified at a suppression hearing. Bannister asserted that the statements were involuntary because he had been denied medical attention. Bannister testified that he had repeatedly requested medical attention for pain from old stab wounds, but did not receive any attention until he talked. Officer Richardson testified that although Bannister had complained about pain, he did not ask to stop the interview or to see a doctor. Abramowitz testified that Bannister did not appear to be in pain. The court denied Bannister's suppression motion.

At trial, Bannister was represented by public defender Ray Gordon. Gordon objected to officer Barnett's testimony concerning Bannister's statements.[3] The trial court indicated that it thought the matter had been resolved at the suppression hearing. Gordon responded that he believed that Bannister had been appointed an attorney before the interrogation. The state replied that the court had already ruled on the matter at the suppression hearing, and the record would reflect when an attorney had been appointed. The trial court noted that the docket sheet showed that Bannister had appeared before a magistrate sometime on August 23, but did not indicate the time.[4] The court then overruled the objection.

In addition to testimony about Bannister's statements and evidence derived therefrom, the state introduced testimony of residents who had seen Bannister in the vicinity of the trailer. However, no one could identify Bannister as the person who shot Reustman or the person seen running from Reustman's trailer. The state also introduced physical evidence which the police had obtained independently of Bannister's statements. On August 22, the police searched a field next to Reustman's trailer and recovered a gun, a shell, a shirt, and a baseball cap. In addition, at the time of Bannister's arrest, officers administered a gun residue test and took fingernail, hair, and soil samples. Although Dr. Philip Whittle, the state's expert, testified that the gun recovered at the field was the murder weapon, he could not link the gun to Bannister. There were no identifiable prints on the gun, and the gun residue test was negative. Dr. Whittle stated that tests could not establish the presence of blood on the shirt, baseball cap or fingernail clippings. Moreover, comparison of soil samples taken from the field and from Bannister's shoes was "not an exact comparison by any means."

---

3. Bannister's statements were not reduced to writing or recorded; they were introduced through witnesses' testimony.

4. Apparently the trial court was referring to the following docket entry:
   Defendant appears in custody. State appears by Pros[ecuting] Attorney. Complaint read to Defendant and Defendant states he understands charges and acknowledges receipt of copy thereof. Defendant advised of right to counsel and right to confer with counsel ... before further proceedings. Defendant claims indigency and files written application for appointment of Public Defender. Found eligible.

Case referred to Public Defender. Formal arraignment continued to August 24 ... Defendant remanded to custody of sheriff on failure to post bond.
The date on the copy of the docket sheet included in the record on appeal appears to be August 23, 1982, but the notation of the date is difficult to read. In his opening brief, Bannister asserts he appeared before a magistrate on August 23, but in his reply brief he states he appeared on August 22. However, at oral argument and in an affidavit, Bannister asserted the date of his appearance was August 23, 1982.

The jury convicted Bannister ˙of capital murder. At the penalty phase, Gordon presented no mitigating evidence, but argued against the death penalty on religious grounds. As the state urged it to do, the jury returned the death sentence, finding two statutory aggravating circumstances—that the murder was committed for the purpose of receiving money and that Bannister had a substantive history of serious assaultive convictions.[5]

On direct appeal to the Missouri Supreme Court, Bannister argued that admission of the statements violated his fifth amendment rights. In his brief Bannister claimed that his request for counsel occurred at 5:15 a.m. on August 22, 1982 and acknowledged that he asked to talk to Sheriff Abramowitz at 7:30 that morning. Bannister argued that "even if [he] initiated the contacts with the law officers for the interrogation," the statements were inadmissible under *Miranda* because counsel had not been afforded and requested medical attention had been denied. Although Bannister acknowledged that "at the time [he] requested to talk to an attorney, the officers ceased questioning him," without explanation, he claimed that the police did not honor his request. *See Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (once suspect invokes fifth amendment right to remain silent, police must "scrupulously" honor request).

Bannister also alleged that the admission of the confession violated his sixth amendment rights. He, however, did not cite any sixth amendment cases. Moreover, he did not mention, as he suggested to the trial court in his objection to Barnett's testimony, that he had been appointed counsel before the interrogation.

The state supreme court analyzed the claim under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *State v. Bannister*, 680 S.W.2d at 147–48. In *Edwards*, a fifth amendment case, the Supreme Court held that an "accused ... having expressed his desire to deal with the police only through counsel, is not subject to

further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1885. ˙ In addition, "even if a conversation ... is initiated by the accused, ... the burden remains upon the prosecution to show that the subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983) (plurality opinion, Rehnquist, J.).

The state court found that the statements were admissible because Bannister had˙ initiated the conversations leading to the interrogation and that the waiver of *Miranda* rights was voluntary. 680 S.W.2d at 148. As to the initiation prong, the court noted that Bannister told the officers that he had used an alias at the motel, "inquired as to the possible punishment for capital murder, expressed regret that he left his 'own profession' of 'robbing banks' at which he 'never got caught,' and speculated about FBI involvement in the current investigation." *Id.* at 147. The court also noted that on his arrival at the county jail, Bannister asked to see Abramowitz. *Id.* As to the waiver prong, the court found that Bannister's "repeated expressions of willingness to talk in the absence of counsel, his volunteered statements to officers about the shooting, his response that he understood his rights, as well as his action in signing the waiver form, show[ed] a˙ valid waiver[.]" *Id.* at 148. The court also noted that "[o]ther than mention of occasional pain from a past injury, [Bannister] did not appear to be in pain during questioning, did·not request immediate medical care or move to halt the interview." *Id.* at 147. The court concluded "there [wa]s no evidence of physical or psychological coercion." *Id.*

In his federal habeas petition, Bannister renewed his challenge to the admission of the statements. He asserted that he requested counsel on August 22, 1982 and argued that the statements were coerced because he had

---

**5.** The state introduced evidence that Bannister had previously been convicted of armed robbery, rape and deviate sexual assault.

not consulted with counsel or been treated by a doctor.

The district court rejected Bannister's arguments. The court applied the presumption of correctness under 28 U.S.C. § 2254(d) to the state court's finding that Bannister had initiated conversations with the police and, based on its independent review, held that the waiver was voluntary. *Bannister v. Armontrout,* 807 F.Supp. at 550. *See Jenner v. Smith,* 982 F.2d 329, 331 (8th Cir.1993) ("While we review the ultimate issue of voluntariness de novo, subsidiary factual determinations made by the state courts are entitled to a presumption of correctness under 28 U.S.C. § 2254(d)."), *petition for cert. filed,* 61 U.S.L.W. 3854 (U.S. June 4, 1993) (No. 92–1951).

■ On appeal, Bannister argues that the district court erred in applying the presumption of correctness to the state court finding that he initiated the conversations leading to the statements. He does not contest that a finding of initiation is subject to a presumption of correctness. *See Self v. Collins,* 973 F.2d 1198, 1217 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1613, 123 L.Ed.2d 173 (1993). Rather, he argues that the finding on initiation was erroneous because the state court ignored the "fact" that he had requested and had been appointed counsel at his initial arraignment, which he claims occurred at 9:00 a.m. on August 23, 1982. Bannister argues that because he had been appointed counsel at the arraignment, admission of the statements also violated his sixth amendment right to counsel under *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Michigan v. Jackson,* the Supreme Court extended *Edwards* to the sixth amendment and held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 S.Ct. at 1411.

The state suggests that review of Bannister's claim concerning the effect of his initial arraignment is procedurally barred. We agree. Bannister did not present the factual and legal bases of his claim that he was appointed counsel at 9:00 a.m. on August 23, 1982 to the state courts. In the state courts, Bannister alleged that he requested counsel on August 22, and argued that even if he had initiated the conversation, the statements were involuntary because he had been denied medical attention.

This court has held that "the same facts and legal arguments must be present in both the state and federal claims or federal review is barred." *Bolder v. Armontrout,* 921 F.2d 1359, 1364 (8th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 154, 116 L.Ed.2d 119 (1991). "This means that the federal claim should not present significant additional facts such that the claim was not fairly presented to the state court." *Kenley v. Armontrout,* 937 F.2d 1298, 1302 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991). "Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits." *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992).

In *Keeney,* a petitioner failed to present material facts in support of a constitutional claim in the state courts. He sought an evidentiary hearing in the district court. The Supreme Court held that he was not entitled to a hearing unless he could "show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure[ ]" or "show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Id.* at ——, 112 S.Ct. at 1721. In *Keeney,* the Court emphasized the importance of "ensuring that full factual development takes place in the earlier, state-court proceedings." *Id.* at ——, 112 S.Ct. at 1719. The Court noted that "state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings." *Id.* at —— ——, 112 S.Ct. at 1719–20. The Court believed its holding advanced comity, by reducing "the 'inevitable

friction' that results when a federal habeas court 'overturn[s] either the factual or legal conclusions reached by the state-court system.'" *Id.* at ——, 112 S.Ct. at 1719 (quoting *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981)).[6]

■ In reply to the state's argument, Bannister does not assert cause and prejudice in an attempt to overcome the bar; nor does he request a remand for an evidentiary hearing to establish his claim. Rather, he maintains the record supports his claim that he requested and was appointed counsel at 9:00 a.m. on August 23, 1982. He is mistaken. Although the trial court docket sheet indicates Bannister appeared before a magistrate on the 23rd and that his case was "referred" to a public defender, as the trial court noted, it does not state the time of the appearance. Bannister attempts to overcome this obvious problem by citing to an undated affidavit, in which he states that he appeared before the magistrate at 9:00 a.m. on August 23rd. However, based on our review of the record, it appears the first time Bannister attempted to submit the affidavit to any court was to the district court in connection with his suggestions in support of a post-judgment motion pursuant to Fed. R.Civ.P. 59(e). In addition, the Rule 59(e) motion was the first time Bannister made the legal arguments he advances on appeal.[7] A Rule 59(e) motion "'cannot be used to raise arguments which could, and should, have been made' before the trial court entered final judgment." *Woods v. City of Michigan City,* 940 F.2d 275, 280 (7th Cir.1991) (quoting *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990)).

■ Although we do not consider Bannister's fifth and sixth amendment claims as they relate to his August 23 appearance, we will consider his fifth amendment claim that the statements were involuntary because Abramowitz told him it would be in his best interest to cooperate. Even though Bannister did not precisely articulate the issue in the state court, we believe he fairly presented both the factual and legal bases of the claim to the state supreme court, *see Kenley v. Armontrout,* 937 F.2d at 1303 (federal court may review claims where there is an "arguable factual commonality" with state claims) (quotation omitted), and that the court resolved the claim. The court noted that Abramowitz had "advised [Bannister] to tell the truth" and concluded that the statements were not the product of psychological coercion. *State v. Bannister,* 680 S.W.2d at 147.

We, however, find no merit to Bannister's argument that the statements were coerced by a promise of leniency. In *Bolder v. Armontrout,* 921 F.2d at 1366, this court rejected a similar argument. We held that an officer's advice that "telling the truth 'would be better' ... did not constitute [an] implied or express promise[ ] of leniency." *Id.*

We next address Bannister's challenge to the trial court's denial of his pro se motion for a psychiatric examination and his counsel's effectiveness in investigating his mental condition. In the motion Bannister stated, "I think I need psychiatric help." On January 18, 1983, Bannister appeared at a hearing. He told the court he needed a mental examination because while in prison he had had trouble sleeping and had become irritable

---

6. This case well may illustrate reasons why the Supreme Court has insisted on fair representation and full factual development of claims in the state courts. Bannister's suppression hearing occurred in October 1982, about two months after his arrest and appearance before a magistrate. At that time, it probably would have been possible to determine whether Bannister appeared before the magistrate at 9:00 a.m. on the 23rd. Now over ten years later, even assuming witnesses would be available, it might be difficult to establish the time at which Bannister appeared before the magistrate.

7. Bannister could not rely on *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), in his direct appeal, because the case was decided after Bannister's conviction became final. Although the state does not raise retroactivity, and we are aware that retroactivity is not jurisdictional, *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990), we nonetheless note that courts have held that *Jackson* created a new rule that could not be applied retroactively on federal habeas corpus review. *See, e.g., Henderson v. Singletary,* 968 F.2d 1070, 1073 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

and forgetful. Bannister denied having a personal or family history of mental illness or having had a mental examination in ten years. He was able to respond to the court's questions concerning his family, education, and date. The court denied the motion, noting that Bannister was well-oriented and that there was "no indication that he was in anything other than good mental state of health."

■ Bannister did not challenge the trial court's denial of the motion on direct appeal. The claim is not barred, however, because the state courts considered the merits of his claim in Bannister's Rule 27.26 motion.[8] *See Ylst v. Nunnemaker*, — U.S. —, —, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991). In the motion, Bannister also raised the related claim that Gordon was ineffective for failing to investigate his mental history in order to present mitigating evidence. The post-conviction court held a hearing on the motion on November 15, 1985. Bannister was represented by public defender Robert Wolfrum. Wolfrum requested a continuance, asserting that Bannister had informed him of the existence of psychiatric records. The court refused a continuance.

At the hearing, only trial counsel Gordon testified on Bannister's behalf. Gordon stated that although he had reviewed statutory mitigating factors, other than age and "to the extent the information was divulged in the discovery given by the state," he did not investigate statutory factors or any non-statutory mitigating factors. Gordon also did not interview any family member, but indicated he thought Bannister's mother had contacted the public defender's office. Gordon testified that during his conferences with Bannister, Bannister was able to respond to questions and make decisions. At the conclusion of the hearing, the court allowed Wolfrum an additional week to submit evidence.

Wolfrum failed to submit additional evidence, and the court denied the motion. Bannister appealed the denial to the Missouri court of appeals, arguing that the trial court's denial of his motion for a psychiatric examination violated his due process rights. Bannister relied on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the Supreme Court held that "when a defendant demonstrates ... that his sanity at the time of the offense is to be a significant factor at trial, the State must ... assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. at 1096. In addition, in *Ake*, the Court held that the "foregoing ... compels a similar conclusion in the context of a capital sentencing procedure, when the State presents psychiatric evidence of the defendant's future dangerousness." *Id.* Bannister contended that he met his burden under *Ake* because he had requested the examination and had been charged with a violent crime.

The Missouri court of appeals disagreed that Bannister met his burden under *Ake*. *Bannister v. State*, 726 S.W.2d at 829. The court noted that Bannister had denied having a personal or family history of mental disease or having had a mental examination in ten years, that three physicians had examined Bannister while he was in custody and found no indication of a mental problem, and that the trial judge found Bannister to be well-oriented. *Id.* In addition, the court noted that despite being given the opportunity at his post-conviction hearing to supplement the record with evidence relating to his mental condition, Bannister failed to do so. *Id.* The court also rejected Bannister's claim that counsel was ineffective because he "failed to investigate [Bannister's] mental condition as a defense and as a mitigating circumstance." *Id.* at 829–30.

■ In his habeas petition, Bannister renewed his challenges to the trial court's denial of his motion for a psychiatric examination and counsel's effectiveness for failing to investigate his mental condition. Apparently in support of both claims, Bannister sought to expand the record with his affidavit and affidavits from family, acquaintances, and Kerry Hough. In his affidavit, Bannister admitted shooting Reustman, but claimed he did not murder him for the money, but only

---

**8.** Rule 27.26 was abolished effective January 1, 1988.

wanted to hurt him "badly" out of revenge. In his affidavit, Hough, who had a masters degree in special education, stated he had treated Bannister in the 1970's and that Bannister's problems "were in the areas of temper and disobedience of all authority." Affidavits from family and acquaintances generally alleged that Bannister had been a good person until he met Wooten.

The district court denied Bannister's motion to supplement the record. 807 F.Supp. at 533. Noting Bannister's failure to submit evidence at his 27.26 hearing, the court reasoned that granting the motion would allow Bannister to circumvent a procedural bar. *Id.* As to the merits of Bannister's *Ake* claim, the court applied a presumption of correctness to the state court underlying factual findings[9] and, after independent review, concluded that Bannister failed to meet his burden under *Ake. Id.* at 534-35. The court also rejected the ineffective assistance of counsel claim, noting that Bannister had given Gordon no reason to investigate his mental condition. *Id.* at 534.

On appeal, Bannister argues that the district court erred in denying his motion to supplement the record. We disagree.[10] *Keeney v. Tamayo–Reyes,* —— U.S. at ——,

112 S.Ct. at 1715, clearly supports the district court's denial. As previously discussed, in *Keeney* the Supreme Court held that a petitioner's failure to develop material facts in the state court will be excused on a showing of cause and prejudice or that a denial of an evidentiary hearing would result in a fundamental miscarriage of justice. *Id.* at ——, 112 S.Ct. at 1721.[11] Bannister does not, and could not, rely on the fundamental miscarriage of justice exception. Nor does he offer any legally cognizable reason why he failed to present evidence in support of his ineffective assistance counsel claim at his 27.26 hearing.[12]

This case is very similar to *Bolder v. Armontrout,* 921 F.2d at 1364. In *Bolder,* counsel offered no mitigating evidence at the penalty phase of a capital trial. In his 27.26 petition, Bolder alleged that counsel was ineffective for failing to investigate and present mitigating evidence. At his 27.26 hearing, Bolder presented the testimony of three inmates and his sister. The state court rejected the ineffective assistance claim. In his federal habeas petition, Bolder alleged that counsel was ineffective for failing to investigate and present mitigating evidence from

---

**9.** For example, the district court applied a presumption of correctness to the trial court's finding that Bannister was well-oriented and in good mental health. Bannister argues the state court findings are not entitled to a presumption of correctness because the state courts focused on his sanity and not his mental condition, especially as it related to his presentation of mitigating evidence at sentencing. We are not persuaded. "We assume *arguendo,* without deciding, that a defendant charged with capital murder has a ... due process right to expert assistance if his mental state is to be a 'significant factor' at the sentencing phase of trial." *Guinan v. Armontrout,* 909 F.2d 1224, 1227 (8th Cir.1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991). We note that Bannister did not request psychiatric assistance in presentation of mitigating evidence. *See Bowden v. Kemp,* 767 F.2d 761, 764 (11th Cir.1985) (no *Ake* violation in the absence of request for psychiatric assistance at sentencing). In any event, we are not convinced that the courts focused solely on sanity. In particular, we note that the Missouri court of appeals stated that Gordon was not ineffective in failing to investigate Bannister's "mental condition as a defense and as a mitigating circumstance." *Bannister v. State,* 726 S.W.2d at 829.

**10.** We also hold that the district court properly refused Bannister's request for a psychiatric examination.

**11.** Bannister's reliance on *Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991), is misplaced. In *Kenley,* we found that a claim that counsel was ineffective for failing to investigate and present mitigating evidence at sentencing was not barred because it had been fairly presented to the state courts. We noted that the records before the courts contained evidence of Kenley's psychiatric and substance abuse problems and that "none of the information ... was hidden from counsel." *Id.* at 1303, 1307.

**12.** Bannister suggests without explanation that post-conviction counsel had insufficient time to obtain the evidence. We note that counsel had been appointed three months before the hearing and that the post-conviction court gave counsel an additional week to submit evidence. Counsel never submitted the evidence or requested additional time. In present circumstances, however, even if post-conviction counsel had been ineffective in failing to obtain evidence, that failure would not constitute cause. *See Nolan v. Armontrout,* 973 F.2d 615, 617 (8th Cir.1992).

his childhood minister and family friends. This court found that review of Bolder's federal claim was procedurally barred. We explained that "[w]hile the legal claims in both petitions [were] the same—ineffective assistance of counsel—the broad factual allegations in support of the claims [were] different." *Id.* Likewise, in this case, Bannister's claim that Gordon was ineffective in failing to investigate and present mitigating evidence from family, acquaintances and Hough is procedurally barred.[13]

As to the merits of Bannister's *Ake* claim, we believe that Bannister failed to meet his burden of demonstrating that his mental condition was likely to be a significant issue at trial or at sentencing. "Where a defendant offers 'little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judges's decision.' " *Bowden v. Kemp,* 767 F.2d 761, 765 (11th Cir.1985) (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985)). On appeal, Bannister argues that he met his burden because he requested the examination and because at the preliminary hearing officer Richardson testified that Bannister sometimes referred to himself in the third person. We first note that Richardson did not testify at the hearing on Bannister's motion for a mental examination and that a different judge presided at the preliminary hearing. In any event, Bannister's arguments are without merit. In *Guinan v. Armontrout,* 909 F.2d 1224, 1227 (8th Cir.1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991), in similar circumstances this court found that a petitioner had not met his burden under *Ake.* In *Guinan,* the petitioner relied on a "history of violent crime, the brutality of the crime with which he was charged, and counsel's belief that [petitioner] suffered from a men-

tal disease." *Id.* at 1227. In regard to the first two factors, this court noted there was no "per se rule requiring a mental evaluation in any case involving a defendant with a history of violent crime charged with yet another violent crime." *Id.* at 1228. In addition, this court found that counsel's belief, which was based in part on his difficulty in communicating with the petitioner, was also insufficient. *Id.*

We next consider Bannister's sixth amendment juror bias claims. During voir dire, venireperson R.E. Morris volunteered that he did not want to put Bannister in jail at taxpayer's expense. After the trial court denied Bannister's motion to remove Morris for cause, Bannister used a peremptory challenge to remove Morris. Although Morris' remark is troubling, Bannister's sixth amendment claim is "foreclosed by *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), in which the Supreme Court rejected a similar claim even though the defendant had to use one of his own peremptory strikes to remove an objectionable veniremember." *Reynolds v. Caspari,* 974 F.2d 946, 947 (8th Cir.1992) (per curiam). *See also United States v. Cruz,* 993 F.2d 164, 168–69 (8th Cir.1993). In *Ross,* the Supreme Court held that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated." 487 U.S. at 88, 108 S.Ct. at 2278.[14]

Bannister also challenges the trial court's exclusion of venireperson Robert Melton. During voir dire, Melton, an ordained minister, stated it was against his conscience to consider the death penalty. Later, he stated that although he would consider the death penalty, "he probably would come up with the same answer." To clear up any

---

**13.** On the record as presented to the state court, we agree with the district court that Bannister had not demonstrated that Gordon was ineffective in failing to investigate his mental condition. As to the prejudice prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we note that the jury might not have considered Hough's testimony that Bannister had problems in the "area of temper and disobedience of all authority" as mitigating evidence. "Evidence of an antisocial personality disorder

might very well have reinforced the state's position that [Bannister] was a dangerous individual, incapable of rehabilitation in the prison system." *Guinan v. Armontrout,* 909 F.2d at 1230.

**14.** Bannister does not raise, and we do not address, any due process claims under *Ross v. Oklahoma.* *See Ross,* 487 U.S. at 91 nn. 4 & 5, 108 S.Ct. at 2280 nn. 4 & 5.

confusion, the trial court asked Melton whether there were any circumstance in which he would vote for the death penalty. Melton responded that "as a pastor, I would feel it would ruin my entire ministry if I would say yes." The trial court removed Melton for cause, and under *Wainwright v. Witt,* 469 U.S. 412, 429, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985), the district court applied a presumption of correctness to the trial court's action.

On appeal, Bannister argues that the presumption of correctness should not apply because the trial court failed to make factual findings in support of its decision. This argument is without merit. In *Wainwright v. Witt,* 469 U.S. at 430, 105 S.Ct. at 855, the Supreme Court "decline[d] to require the judge to write out in a separate memorandum his findings on each juror excused." The Court believed that "[a] trial judge's job is difficult enough without senseless make-work." *Id.* The Court also held that where there was a transcript of the voir dire a judge was not "required to announce for the record his conclusion that [a juror] was biased, or his reasoning." *Id.* As did the district court, we find the record supports the trial court's decision to remove Melton. *See Hatley v. Lockhart,* 990 F.2d 1070, 1072 (8th Cir.1993).

We turn to Bannister's argument that the trial court violated his eighth and fourteenth amendment rights when it answered a jury question about parole. During penalty phase deliberations, the jury asked the trial court whether "life imprisonment would be for fifty years without any possibility of parole ... or does it come up for review every ten years, or five years, or seven years?" The court first told the jury, "The law is stated in the instructions, and that's the way it is. That's the law." The jury then asked, "There's no way he would be eligible for parole?" The court responded, "Under the law that exists, there is none now."

On appeal, Bannister argues, as he did in the state and district courts, that the trial court's comment prejudiced him because the jury impermissibly considered the possibility of parole in deciding to recommend the death sentence. Bannister relies on *Caldwell v. Mississippi,* 472 U.S. at 323, 105 S.Ct. at 2636, wherein the Supreme Court reversed a death sentence because the prosecutor had misled a jury into believing that "responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case."

Bannister's argument is without merit. In *Gilmore v. Armontrout,* 861 F.2d 1061, 1064–65 (8th Cir.1988), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989), this court found that a prosecutor's comments during a penalty phase closing argument that the Missouri legislature might modify the parole statute and that the governor could commute a life sentence did not violate the federal constitution. This court distinguished *Caldwell,* noting that the prosecutor's comments in *Gilmore* "did not mislead the jury; rather, they accurately apprised it of the potential consequences of its sentencing alternatives." *Id.* at 1066. This court relied on *California v. Ramos,* 463 U.S. 992, 995, 103 S.Ct. 3446, 3450, 77 L.Ed.2d 1171 (1983), in which the Supreme Court upheld a state statute which required that a capital sentencing jury be informed about the governor's power of commutation. The Supreme Court explained that the instruction was "both accurate and relevant to a legitimate state penological interest—that interest being a concern for the future dangerousness of the defendant should he ever return to society." *Caldwell,* 472 U.S. at 335, 105 S.Ct. at 2643.[15]

We next address Bannister's contention that the district court erred in concluding that certain evidentiary and instructional penalty phase claims were procedurally

---

15. Although we need not address Bannister's argument that the district court erred in refusing to consider Gordon's affidavit stating that two jurors would have voted for life if not for the trial court's comment about parole, we believe the court correctly refused to consider the affidavit. It was hearsay and violated Fed.R.Evid. 609(b).

Nor do we address Bannister's argument that the trial court's comment violated state law. *See Monroe v. Collins,* 951 F.2d 49, 52 (5th Cir.1992) (court refused to consider the question whether jury's comment about parole violated state law, because comment did not violate federal constitution).

barred. On direct appeal, Bannister argued that the trial court erred in admitting into evidence an exhibit which showed that he had been paroled on a previous conviction. Bannister argued that the admission of the exhibit prejudiced him, as demonstrated by the jury question about parole. Bannister also argued that the trial court erred in failing to instruct the jury that it could consider as mitigating evidence that he was acting under the domination of Wooten. The state supreme court rejected both claims under plain-error review. The court upheld the admission of the exhibit, noting it was relevant to punishment. 680 S.W.2d at 146. The court also found that Bannister had produced insufficient evidence to support an instruction that he was acting under the substantial domination of Wooten, noting that Bannister had agreed to the contract killing and that he had killed Reustman while Wooten remained in Illinois. *Id.* at 149.

In his habeas petition, Bannister renewed these evidentiary and instructional claims. The district court found that the claims were barred, despite the fact that the Missouri Supreme Court had reviewed the claims for plain error. 807 F.Supp. at 538, 542. In the facts of this case, we agree with Bannister that the district court erred in refusing to consider the merits of the claims.[16] As Bannister points out, in *Williams v. Armontrout,* 877 F.2d 1376, 1379 (8th Cir.1989), *cert. denied,* 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990), this court held that because the Missouri Supreme Court had conducted plain error review, "no procedural defect exists to bar federal review." *See also Baker v. Leapley,* 965 F.2d 657, 659 (8th Cir.1992) ("We may consider the merits of the jury instruction issue because the [state supreme court] reviewed the instructions for plain error despite [petitioner's] failure to object to them at trial.").

We, however, find the claims to be without merit. Because the jury could consider the possibility of parole, there was no error in the admission of the exhibit showing that Bannister had been paroled. We also find Bannister's claim regarding the failure of the trial court to submit an under-the-domination-of-another instruction without merit. In this murder-for-hire case, the Missouri Supreme Court's finding that Bannister failed to produce sufficient evidence to warrant submission of the instruction is supported by the record. *See Williamson v. Jones,* 936 F.2d 1000, 1004 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 901, 116 L.Ed.2d 802 (1992). The Supreme Court has made clear that "state courts need give jury instructions in capital cases only if the evidence so warrants." *Delo v. Lashley,* —— U.S. ——, ——, 113 S.Ct. 1222, 1224, 122 L.Ed.2d 620 (1993). In addition, " 'a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.' " *Id.* (quoting *Walton v. Arizona,* 497 U.S. 639, 650, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990)).

Bannister claims that the state deprived him of due process by its late notice of its intent to seek the death penalty. Bannister first raised the claim in the district court in a Rule 59(e) motion. The district court correctly found that presentation of the claim in a 59(e) motion was the functional equivalent of a second petition, and as such was subject to dismissal as abusive. As previously explained, a Rule 59(e) motion cannot be used to raise arguments that could have been raised before judgment was entered. *Cf. Guinan v. Delo,* 5 F.3d 338, 341 (8th Cir. 1993) (district court correctly treated Rule 60(b) motion as second petition because it sought to "raise claims that ... could have been raised in [the] original habeas petition"); *Smith v. Armontrout,* 888 F.2d 530, 539–41 (8th Cir.1989) (claim raised for first time in motion to remand dismissed as abusive). The district court also correctly found that review of the claim was procedurally barred, and that Bannister had failed to demonstrate cause or prejudice to overcome the procedural bar or the abuse of the writ doctrine.

---

16. We do not suggest that in every case plain-error review is sufficient to permit federal habeas review. *See Hayes v. Lockhart,* 766 F.2d 1247, 1252 (8th Cir.), *cert. denied,* 474 U.S. 922, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985).

As indicated, the judgment of the district court denying Bannister's petition for relief under 28 U.S.C. § 2254 should be, and hereby is, affirmed.

BRIGHT, Senior Circuit Judge, concurring.

I concur in the result.