Alan J. BANNISTER, Petitioner,

v.

Paul DELO, Respondent.

No. 94–1141–CV–W–9.

United States District Court,
W.D. Missouri,
Western Division.

Sept. 15, 1995.

Bruce E. Baty, Morrison & Hecker, Christopher D. Schneider, Morrison & Hecker, Kansas City, MO, for Alan Jeffrey Bannister.

*ORDER GRANTING PETITIONER'S MOTION FOR RECONSIDERATION; DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING; REAFFIRMING THE DECEMBER 5, 1994, ORDER DENYING EMERGENCY MOTION FOR STAY OF EXECUTION AND DENYING PETITIONER'S THIRD PETITION FOR WRIT OF HABEAS CORPUS*

BARTLETT, Chief Judge.

In 1983 Alan J. Bannister was convicted of capital murder and sentenced to death in the Circuit Court of McDonald County, Missouri. The Missouri Supreme Court affirmed Bannister's conviction and sentence. *State v. Bannister,* 680 S.W.2d 141 (Mo.1984). Bannister filed a motion under Missouri Supreme Court Rule 27.26 seeking post-conviction relief which was denied by the sentencing court on December 17, 1985. Bannister's appeal from the denial of his Rule 27.26 motion was unsuccessful. *Bannister v. State,* 726 S.W.2d 821 (Mo.App.1987).

On July 16, 1987, Bannister filed in this court a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. On July 29, 1987, Bruce Baty was appointed to represent Bannister.

On August 23, 1991, I denied Bannister's Petition for Writ of Habeas Corpus. *Bannister v. Armontrout,* 807 F.Supp. 516 (W.D.Mo.1991). On September 3, 1991, Bannister filed a Motion to Alter or Amend the Judgment or, in the Alternative, to Reconsider the August 23, 1991, Order Denying Petitioner's Request for Writ of Habeas Corpus. This motion contained a new claim for relief, and thus was a second or successive petition for habeas corpus. On April 30, 1992, I issued an Order Denying the Motion to Alter or Amend the Judgment and denying the new claim for relief.

On September 24, 1994, the Eighth Circuit Court of Appeals affirmed the denial of Bannister's Petition for Writ of Habeas Corpus. *Bannister v. Armontrout,* 4 F.3d 1434 (8th Cir.1993). On October 31, 1994, the United States Supreme Court denied Bannister's Petition for Writ of Certiorari. *Bannister v. Armontrout,* —— U.S. ——, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994). On November 9, 1994, the Eighth Circuit Court of Appeals transmitted to this court its judgment affirming the denial of the Petition for Writ of Habeas Corpus.

On November 15, 1994, the Supreme Court of Missouri issued an Order and Warrant of Execution, setting Bannister's execution date for December 7, 1994. On November 17, 1994, the Eighth Circuit Court of Appeals recalled its November 9, 1994, Mandate.

On November 29, 1994, petitioner filed the present habeas corpus petition. The case was assigned to the Honorable Fernando J. Gaitan. A few hours after the case was filed, Judge Gaitan, being unfamiliar with the record, issued a stay of execution "to adequately review petitioner's petition for habeas corpus." On November 30, 1994, Judge Gaitan transferred this case to me, pursuant to Local Rule 35. Because the Mandate in No. 87–0637–CV–W–9 had been recalled, that case had not been terminated. Therefore, on

November 30, 1994, I issued an order, in *Bannister v. Armontrout*, No. 87–0637–CV–W–9, reaffirming the stay of execution which had been in effect since 1988. Because a stay of execution was already in effect in No. 87–0637–CV–W–9, I vacated the stay in this case without prejudice to the filing of a new motion to stay if the stay in No. 87–0637–CV–W–9 were dissolved.

On December 2, 1994, the Eighth Circuit Court of Appeals, issued its mandate in No. 87–0637–CV–W–9, which terminated appellate review of the orders denying the first and second petitions for habeas relief. The stay of execution I had issued in No. 87–0637–CV–W–9 was thereby dissolved.

Thereafter, on December 2, 1994, petitioner filed his Second Emergency Motion for Stay of Execution in this case. On December 5, 1994, I denied petitioner's motion for stay of execution and denied his Third Petition for Writ of Habeas Corpus.

Petitioner appealed.

On December 5, 1994, the Eighth Circuit Court of Appeals stayed the execution to consider petitioner's appeal. While the appeal was pending before the Eighth Circuit Court of Appeals, the Supreme Court of the United States decided *Schlup v. Delo*, —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

On January 27, 1995, the Eighth Circuit Court of Appeals granted respondent's motion for a limited remand ordering that I reconsider appellant's guilt phase claims in light of *Schlup*. The Court of Appeals also ordered that I could reconsider any of the other rulings challenged by appellant.

On January 31, 1995, I held a telephone conference in this case to set a schedule for briefing the issue of what impact *Schlup* had on this case.

On February 10, 1995, Bannister filed a Motion for an Evidentiary Hearing and Reconsideration of the Court's Order of December 5, 1994, Denying Request for Writ of Habeas Corpus.

Bannister requests the Court to enter an order granting an evidentiary hearing on Bannister's claims of actual innocence as well as his claims of cause and prejudice, and to allow necessary and reasonable discovery as the Court deems just and proper pursuant to Habeas Rule 6.

Bannister asserts that if he is allowed

to present newly discovered evidence during that evidentiary hearing, he will be able to meet the actual innocence standard set forth in *Schlup*, i.e., that it is more likely than not that no reasonable juror would have found him guilty of capital murder beyond a reasonable doubt in light of newly discovered evidence.

Petitioner's Memorandum in Support of Motion (Doc. 26) at 3.

Bannister argues that the affidavits of Trombley, Wooten and others presented in support of his Third Petition for Writ of Habeas Corpus provide sufficient newly discovered evidence to entitle him to discovery and an evidentiary hearing under the *Schlup* standard.

The State responds that the newly discovered facts are neither newly discovered nor reliable. The State requests that I "certify to the United States Court of Appeals for the Eighth Circuit that petitioner's information fails to rise to the level of 'probable actual innocence' within the meaning of *Schlup v. Delo*."

As ordered by the Court of Appeals, I will reassess Bannister's guilt phase claims in light of *Schlup*.

### I. *The Schlup Standard*

■ When a convicted State prisoner seeks habeas corpus relief from a federal court and fails to present all of his claims or all of the evidence he had in support of his claims in his first federal petition, the State prisoner will be barred from doing so in later habeas corpus petitions unless he can show " 'cause and prejudice' sufficient to excuse this failure...." *Schlup*, —— U.S. at ——, 115 S.Ct. at 861. If the State prisoner is unable to show "cause and prejudice," he may obtain review "only if he falls within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.' " *Id.*

The petitioner in *Schlup*, like Bannister here, relied upon a "miscarriage of justice" theory. *Id.* at ——, 115 S.Ct. at 861. The

petitioner in *Schlup* claimed that he was innocent of capital murder and that the trial court committed a constitutional error at his trial.

> For that reason, Schlup's conviction may not be entitled to the same degree of respect as one ... that is the product of an error-free trial. Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner such as Schlup presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Id.* at ——, 115 S.Ct. at 861.

■ To get through this gateway, a petitioner must present "new reliable evidence" not presented at trial establishing "sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Id.* at —— – ——, 115 S.Ct. at 861–62. The "new reliable evidence" not presented at trial must be sufficient to convince the court "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at ——, 115 S.Ct. at 867. This standard "ensures that petitioner's case is truly 'extraordinary' ... while still providing petitioner a meaningful avenue by which to avoid manifest injustice." *Id.*

> The meaning of actual innocence as formulated by *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), and *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard ad-

dresses; rather the standard requires the district court to make a probablistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* at ——, 115 S.Ct. at 868 (full citations added).

Here, as in *Schlup,* this standard must be applied to a request for an evidentiary hearing.

> In this case, the application of the *Carrier* standard arises in the context of a request for an evidentiary hearing. In applying the *Carrier* standard to such a request, the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. Obviously, the Court is not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment.... Instead, the Court may consider how the timing of the submission and the *likely credibility of the affiants bear on the probable reliability of that evidence.*

*Id.* at ——, 115 S.Ct. at 869 (emphasis added) (citations omitted).

In two decisions since *Schlup,* the Eighth Circuit Court of Appeals has emphasized that the opportunity for a petitioner to avoid the procedural bar against successive or abusive claims by showing a fundamental miscarriage of justice is a narrow exception reserved for extraordinary circumstances.

> Even if a federal habeas petitioner cannot show cause and prejudice, he may still be entitled to have his successive or abusive claims heard on their merits if he can show that failure to do so would result in a fundamental miscarriage of justice. This is a narrow exception, however, reserved for extraordinary circumstances and explicitly tied to a petitioner's actual innocence.

*Washington v. Delo,* 51 F.3d 756, 760–61 (8th Cir.1995).

[A] very narrow equitable exception exists for a petitioner who can make a showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'

*Nachtigall v. Class*, 48 F.3d 1076, 1081 (8th Cir.1995) (quoting *Schlup*, —— U.S. at ——, 115 S.Ct. at 864) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)).

## II. *Discussion*

As required by *Schlup*, petitioner's request for an evidentiary hearing based on newly discovered evidence will be evaluated in light of the foregoing standards.

### A. *Claim I*

Bannister asserts that presentation to the jury of his oral statements given to the police on August 23, 1982, violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

This claim has already been rejected by this Court and the Court of Appeals. *See Bannister v. Armontrout*, 807 F.Supp. 516 (W.D.Mo.1991); *Bannister v. Armontrout*, 4 F.3d 1434, 1436 (8th Cir.1993).

Bannister argues that the Court of Appeals improperly applied a procedural bar to this claim "without allowing Bannister a reasonable opportunity to show cause and prejudice and/or actual innocence...." Petition for Writ of Habeas Corpus, filed November 29, 1994, (Doc. 1) at 24.

█ Bannister has come to the wrong court with this argument. I have no authority to review what the Court of Appeals has done in this case. Bannister's remedy was to ask the Eighth Circuit Court of Appeals for a rehearing (which he has done unsuccessfully), or to ask the United States Supreme Court to review the Court of Appeals' decision (which he has done unsuccessfully).

Bannister argues that he can overcome any procedural bar in this case because the newly discovered evidence, summarized in affidavits submitted by him, has sufficient "probative force" to entitle him to an evidentiary hearing. Petitioner's Memorandum filed February 10, 1995, at 3 (Doc. 26).

In this case, Bannister's new evidence with respect to his guilt phase claims is set forth in an affidavit from Ronald Rick "Indian" Wooten, a career criminal currently serving a life sentence, in an affidavit from investigator Beverly Taylor, who interviewed Wooten, and in an affidavit from Steven Trombley, who investigated Ruestman's murder. None of these affiants witnessed Ruestman's killing.

### 1. *Wooten Affidavit*

█ Wooten is currently serving a life sentence for the murder of his former wife. Bannister's counsel describes Wooten as

a criminal who terrorized central Illinois for more than twenty years. He was at one time president of the Illinois motorcycle gang the Arapahos. He was a major drug dealer, and used his job as a long haul truck driver for Caterpillar to build a network of narcotics distribution throughout the United States. He was also into prostitution.

Petition for Writ of Habeas Corpus at 30.

The heart of Wooten's affidavit is the following two sentences in ¶¶ 3 and 4: "3. I know for a fact that this murder was not a murder for hire, and I told this to the police. 4. I had no contact with any of the persons allegedly involved." [1]

Evidence was presented at trial that Wooten was the middleman in the contract killing scheme and that Wooten hired Bannister to kill Ruestman.

Wooten's criminal record would cause a reasonable juror to approach anything he

---

**1.** Wooten's affidavit reads as follows:

1. I am incarcerated at the Gallate Correctional Center in Gallate, Illinois.
2. In the summer of 1982, I was residing in the Phoria, Illinois area. I was taken to the police station for questioning regarding the killing of Darnel Ruestman. I was aware that Alan Bannister was arrested for the [m]urder

because the police told me. The police believed it was a murder for hire.
3. I know for a fact that this murder was not a murder for hire, and I told this to the police.
4. I had no contact with any of the persons allegedly involved. The police released me the same day.

said with caution. A reasonable juror's skepticism would be enhanced by the self-serving, conclusory nature of Wooten's testimony, unsupported by facts. A reasonable juror would wonder how Wooten knows for a fact that it was not a murder for hire if he was not involved or if he had no contact with the persons allegedly involved. Also, Wooten's assertion that he "had no contact with any of the persons allegedly involved" conflicts with the Trombley affidavit submitted by Bannister. For instance, see ¶ 19 in which Trombley says that he has "confirmed strong circumstantial evidence of a connection between Richard McCormick and Indian [Wooten]." Wooten's statements also appear to conflict with the Petitioner's Statement of the Case as set out in his November 29, 1994, Writ of Habeas Corpus. Where Wooten denies being involved with anyone allegedly associated with the Reustman killing, Bannister states "In the summer of 1982, [I] sold drugs for [Wooten]."

Wooten's affidavit falls far short of "reliable evidence" having sufficient probative force to prevent a reasonable juror from finding petitioner guilty beyond a reasonable doubt.

### 2. Taylor Affidavit

Bannister also submits an affidavit from Beverly Taylor. In the affidavit, Taylor, an investigator with the Missouri Capital Punishment Resource Center, testifies about her interviews with Wooten. In crucial parts, Taylor's affidavit just summarizes Wooten's conclusory statements, e.g., "Wooten stated several times throughout our conversation that this was not a 'hit'." The factual basis for Wooten's knowledge about the killing is just as lacking from Taylor's affidavit as from Wooten's.

Ignoring the hearsay impediment to getting Taylor's testimony before a jury, no reasonable juror would find Taylor's testimony supportive of Wooten's credibility. When considered with the evidence presented at trial, Taylor's affidavit, whether considered alone or with Wooten's affidavit, falls far short of the type of evidence that would raise a reasonable doubt in the mind of a reasonable juror.

### 3. Trombley Affidavit

Trombley works as a writer and film maker. Trombley states that he interviewed Bannister while doing research for his 1992 book, The Execution Protocol. After completing the film based on the book, Trombley spent two years reinvestigating the shooting of Ruestman. Trombley states that he has written a biography of Bannister and is "presently directing a documentary feature film entitled 'Raising Hell: The Stories of A.J. Bannister.'" Trombley's affidavit summarizes his investigation and tells the story leading to the death of Ruestman as Trombley sees it. Bannister argues that Trombley's investigative work reveals that this was not a murder for hire but an accidental killing, or at most second degree murder.

In assessing the impact Trombley's testimony might have on a reasonable juror, it is noteworthy that Trombley's testimony is substantially based on what others told him. Affidavits from the people Trombley refers to are not furnished. Without affidavits from witnesses with first hand knowledge who could testify, the probative force of Bannister's so-called newly discovered evidence falls far short of the probative force of the newly discovered evidence in Schlup.

Also, Trombley's commercial interest in Bannister should cause a reasonable juror to view Trombley's testimony with caution. Throughout the affidavit, Trombley reveals his bias through exaggeration and drawing conclusions which he is unqualified to make. For instance, Trombley asserts that "Bannister's conviction and death sentence was [sic] based on an alleged oral confession given to Newton County investigators following the shooting of Darrell Ruestman." Trombley affidavit at 3. Trombley then argues that the confession was not substantial evidence. At the trial the wording and circumstances of the confession were presented to the jury. It was up to the jury to assess the substantialness of the confession. Trombley identifies no newly discovered evidence that would require a reasonable juror to reach a conclusion about the confession more favorable to Bannister than could have been reached under the evidence presented at trial.

Essentially what Trombley does is weave together facts presented at trial, some new facts and some hopeful speculation to come up with a theory about how the killing happened. Bannister has advanced and abandoned several theories already. After his arrest Bannister told the police he had been hired for $4,000 to kill Ruestman. Tr. V at 138–39. At trial, Bannister argued that there was a reasonable doubt about his responsibility for the killing. Bannister argued that a third person committed the murder. During state post-conviction proceedings, Bannister advanced a mental disease defense. In support of his first Petition for Habeas Corpus, Bannister contended that he killed Ruestman because he was under the domination of Wooten and that the killing was not a murder for hire but was motivated by a desire for revenge. A reasonable juror would not be impressed with another theory absent new facts of substantial probative force.

The facts presented by Trombley that might fairly be characterized as new facts are either not supported by a reliable first hand source, thereby making admissibility at trial uncertain, or are not focused enough to be persuasively inconsistent with the contract killing theory.

For instance, Trombley links McCormick to Wooten and Wooten to Ruestman's murder (thereby conflicting with Wooten's affidavit). However, Trombley also connects Wooten and Bannister. *See* affidavit at 9. These facts could support the State's theory that Wooten, acting as a middleman for McCormick, hired Bannister to murder Ruestman just as easily as they support Trombley's accidental shooting theory.

Also, an important fact Trombley uses to support his accidental shooting theory comes from Bannister. (*See* ¶ 3e of Trombley's affidavit where Trombley says that "Bannister states that after Ruestman answered the door, Bannister said: 'I'm from Illinois and want to know why.' The struggle ensued after this statement by Bannister."). No affidavit from Bannister confirms that he said this. No statement is made that Bannister would ever testify to this fact. Without a representation that Bannister would

testify to this fact it cannot be seriously considered in assessing the reaction of a reasonable juror. Furthermore, how a statement by the defendant can be new evidence is never explained. Finally, Trombley's statement about what Bannister says happened directly contradicts the testimony of Linda McCormick, Ruestman's girlfriend, who was in the trailer at the time of the murder and testified that she heard no conversations before hearing the shot. *See* Tr. III at 49, 65.

Trombley's affidavit does not present "new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Putting a different spin on evidence that was presented to the jury does not satisfy the requirements set forth in *Schlup*.

### 4. *Conclusion*

Comparing Trombley, Wooten, and Taylor's affidavits with the affidavits in *Schlup* reveals the weakness of the former compared with the latter. None of Bannister's affidavits are from witnesses to the killing. Only Wooten's affidavit is from anybody alleged to be directly involved in the events leading up to the killing and it is conclusory, incredible, and unpersuasive. If the newly discovered evidence in *Schlup* was sufficient to make Schlup's case "'truly extraordinary'" therefore satisfying the *Carrier* standard, Bannister's combination of conclusions, rehashed trial evidence, and unreliable second and third hand facts is truly ordinary.

The absence of probative force of the newly presented evidence when compared to the evidence of guilt presented at trial convinces me that petitioner has not and could not establish a miscarriage of justice. Making the "probablistic determination" described in *Schlup*, petitioner has not persuaded me that there is a reasonable likelihood that after an evidentiary hearing, I would conclude that "no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt."

Therefore, because Claim I has already been rejected by this court and by the Eighth Circuit Court of Appeals and because Bannister has not presented new facts suffi-

cient to justify an evidentiary hearing on the issue of whether he is actually innocent, petitioner's motion for an evidentiary hearing will be denied. Consequently, Claim I is barred as a successive claim.

## B. *Claim II*

In his second claim, petitioner asserts that he received ineffective assistance of counsel during the guilt phase of his trial in violation of the Sixth and Fourteenth Amendments. Specifically Bannister contends that trial counsel's performance was constitutionally deficient because counsel failed to uncover and present to the jury evidence that Bannister was not a hired killer.

This claim has already been considered and ruled adversely to Bannister. *Bannister v. Armontrout*, 807 F.Supp. at 556, *aff'd* 4 F.3d 1434, *cert. denied*, —— U.S. ——, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994). Therefore, this claim is also a successive claim.

For the reasons discussed with regard to Claim I, Bannister has failed to present reliable new evidence that persuades me that there is a reasonable likelihood that, after an evidentiary hearing, I would determine that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *See Schlup*, —— U.S. at ——, 115 S.Ct. at 868. Therefore, petitioner's request for an evidentiary hearing will be denied. Claim II is barred as a successive claim.

## C. *Claim III*

In his third claim, Bannister asserts that his Sixth and Fourteenth Amendment rights were violated because his trial counsel failed to find and present evidence that would cast doubt on the aggravating circumstances presented by the State in the sentencing portion of the trial. Also, Bannister argues that counsel performed ineffectively by failing to present mitigating evidence in the sentencing portion of the trial.

This claim was rejected in the December 5, 1994, order denying the relief Bannister requested in his Third Petition for Writ of Habeas Corpus. Bannister urges reconsideration based on his allegation that none of the previous convictions involved serious assaultive conduct. "Bannister believes he can show in an evidentiary hearing that if the

true facts of his prior convictions had been presented to the jury, they would not have found beyond a reasonable doubt that Bannister had a substantial history of serious assaultive convictions." Petitioner's Memorandum in Support (Doc. 26) at 14. Bannister supports this request with the affidavit of Steven Maurer.

Bannister also asserted that he

> can meet the *Sawyer* test by showing that due to the ineffective assistance of his trial counsel during the penalty phase, mitigating evidence was not presented to the jury that would have clearly outweighed any aggravating evidence presented by the prosecution, thus rendering Bannister ineligible for the death penalty under the Missouri capital punishment law.

This claim is supported by affidavits from Brad Bannister, Linda Helmisk, Alice Bannister and Adele Bannister.

Bannister argues, with respect to his ineffective assistance of counsel claims, that "any procedural bar or abusive or successive writ bars that could be asserted as defenses by respondent would be overcome because these claims have been supplemented with a colorable showing of actual innocence." But, as discussed earlier, Bannister has failed to present newly discovered facts making a colorable showing of actual innocence.

Therefore, after reconsideration, I reaffirm that this claim is barred for the reasons stated in the December 5, 1994, order. Bannister has not demonstrated cause sufficient to relieve him of the abusive or successive writ bars. Also, Bannister failed to present facts that would suggest any reasonable likelihood that he could establish by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death sentence. *See Sawyer*, 505 U.S. at 346–47, 112 S.Ct. at 2523.

## D. *Claim IV*

In Claim IV, Bannister claims that his "Eighth and Fourteenth Amendment Rights were violated by the failure of the Missouri Supreme Court to conduct the type of proportionality review mandated by Missouri

Statutes and the failure of the Missouri Supreme Court to maintain the data relevant to the proportionality review required by Missouri Statutes."

This claim was not raised in Bannister's First or Second Petitions for Writ of Habeas Corpus. It was raised in his third petition and rejected in the December 5, 1994, order. Bannister requests that I reconsider "his claim that his Eighth and Fourteenth Amendment rights were violated by the Missouri Supreme Court's failure to conduct the type of proportionality review mandated by Missouri statutes."

After reconsidering this claim, I reaffirm its rejection for the reasons stated in the December 5, 1994, order.

### E. *Claim V*

In his fifth claim Bannister asserts that his statements to the police after his arrest were obtained in violation of his Fourth and Fourteenth Amendment rights because there was no probable cause for his arrest. Also, Bannister argues that his trial counsel was constitutionally ineffective in violation of Bannister's Sixth and Fourteenth amendment rights because he failed to assert this as a ground for suppressing the statements.

For the reasons stated in the December 5, 1994, Order Denying Petitioner's Third Petition for Writ of Habeas Corpus, Bannister has failed to demonstrate either cause or prejudice for relieving him of the bar against raising abusive or successive claims.

### III. *Conclusion and Order*

After reconsidering, in light of *Schlup*, the guilt phase claims Bannister raised in his Third Petition for Writ of Habeas Corpus and after reconsidering Bannister's sentencing claims, I reaffirm the December 5, 1994, order denying both the requested stay and the Third Petition for Writ of Habeas Corpus.

Accordingly, it is ORDERED that:

1) petitioner's motion to reconsider my December 5, 1994, Order Denying Petitioner's Second Emergency Motion for Stay of Execution and Denying the Relief Requested in Petitioner's Third Petition for Writ of Habeas Corpus is granted;

2) petitioner's Motion for Evidentiary Hearing is denied;

3) after reconsideration, the December 5, 1994, order is reaffirmed; and

4) pursuant to Rule 4 of the Rules Governing Section 2254 cases in United States District Courts, petitioner is not entitled to relief and the petitioner's Third Petition for Writ of Habeas Corpus is dismissed.