MILLER TODD COAL COMPANY *v.* ADRIAN FUEL COMPANY, *et al.*

(CC 601)

Submitted February 7, 1939. Decided March 14, 1939.

*Myron B. Hymes* and *Fred B. Haught,* for plaintiff.
*Waugh & Waugh,* for defendant.

MAXWELL, JUDGE:

Determination of the challenges of a bill and answer is the purpose of this certification. The bill in part and the answer in its entirety were held insufficient on demurrer.

The primary object of the bill is to enforce against the

large acreage of coal of Adrian Fuel Company, hereinafter called defendant, the liens of three judgments against the defendant purchased by the plaintiff in March, 1938. With respect to all matters pertaining to the liens of these judgments, the allegations of the bill were properly held sufficient by the trial chancellor.

But there is another feature of the bill. This involves allegations that in December, 1937, at a public sale of delinquent lands by the sheriff of Upshur County, the plaintiff purchased for $1671.72 the coal properties of the defendant, delinquent for non-payment of taxes for 1936. The plaintiff asserts that in addition to the statutory rights of a purchaser at a tax sale of real estate, it is "subrogated to the lien of the State of West Virginia for the amount paid for said real estate at said tax sale, with interest thereon at 12% per annum as provided by law." It was to this feature of the bill that the chancellor sustained the defendant's demurrer.

A purchaser of land at a tax sale may receive a deed therefor in the manner prescribed by statute. Code, 11-10-16. That is a right which the state has created for him, but no provision of statute vests in one who stands solely as a purchaser the benefit of the lien which belongs to the state. The situation is different as to a creditor who has a lien against real estate which has been sold for taxes. He may redeem. Code, 11-10-12. Also, a former owner, his heir or devisee, or a lienholder or lessee may, prior to sale by the state, redeem land which has become forfeited to, or been purchased by, the state. Code, 37-3-29. A lessee or lienor who redeems shall be entitled to a lien on the land for the amount of the redemption. See section last cited. And then, too, a person possessed of a real or apparent interest in property who pays the taxes thereon to protect it from delinquency is entitled to be subrogated to the rights of the taxing power. *Camden v. Fink Coal & Coke Company*, 106 W. Va. 312, 315, 145 S. E. 575, 61 A. L. R. 584. The interest of the state is the collection of taxes due it on land and not the acquisition of the land. "It is not the state's primary purpose to

wrest land from its owner or to deprive his creditors of recourse thereto." *Coal Land Company* v. *Bank,* 110 W. Va. 46, 48, 156 S. E. 838, 840. Extreme indulgence is accorded by the state to persons who have had a direct interest in the land, but to a stranger it extends only the right of a purchaser at a tax sale—that right being to obtain a deed in due course. The plaintiff does not sustain the role of a creditor seeking to redeem land for the protection of his debt, or the position of one with an apparent interest who has paid taxes to prevent delinquency. It occupied only the status of a stranger when it bought the property at the sheriff's sale in December, 1937. There is no possible theory on which that purchase could be held to have been for the protection of the plaintiff's judgment liens not acquired by it until about three months after the tax sale. Prior to the acquisition of the judgments, the defendant was not indebted to the plaintiff.

It follows, with relation to the purchase at the tax sale of 1937, that the plaintiff stands merely as a purchaser and is in no wise entitled to be placed in the favored position of the state. For these reasons the trial chancellor was correct in sustaining the defendant's demurrer to the portion of plaintiff's bill which undertakes to set up a right of subrogation as stated.

The remaining question pertains to the defendant's answer wherein, for the purpose of forestalling the plaintiff's right to prosecute this suit, there is invoked the equitable doctrine that he who comes into equity must come with clean hands. To justify the application of this maxim of equity, the defendant alleges that it holds title to a large acreage of land and coal near the village of Adrian in Upshur County; that it has created a deed of trust indebtedness of about $227,000.00 against this property, which indebtedness is represented by bonds which are outstanding and owned by various persons; that if the property were sold under existing business conditions there could not be realized from the sale a sum sufficient to pay the bonds and accrued interest; that "there is no equity in said real estate after the satisfaction of said

bonds for the payment or satisfaction of any judgments or debts of subsequent priority to that of said deed of trust"; that the respondent has during the last few years continued the operation of its mine without objection on the part of bondholders, "notwithstanding the fact that from said operation it has been unable to pay into the sinking fund any·sum whatever for interest and retirement of the said bonds"; that the plaintiff is a neighboring competitor of respondent's in the mining and marketing of coal; that when the plaintiff bought the judgments recited in its bill, it "well knew there was no equity in the property of the respondent for the satisfaction of the said judgments"; that the plaintiff, in acquiring the judgments and in instituting this suit, was prompted by ulterior purposes; that the real object of the plaintiff is to force sale of respondent's properties so that plaintiff may attain ownership and possession of about seventy-two acres of respondent's coal, adjacent to the mining property of the plaintiff; that for two or three years plaintiff has been trying to purchase from respondent this portion of coal land, but respondent could not sell the same to plaintiff because of the deed of trust·lien thereon, and that in an effort to secure a lease the plaintiff offered to pay a royalty of five cents per ton for the coal in the 72-acre tract, whereas the respondent deemed that price to be inadequate, but offered to accept ten cents per ton; that respondent is informed and upon information charges that the plaintiff, through its officers and agents, made threats that it would put the respondent out of business and intended to obtain the desired tract of 72 acres of coal; that in pursuance of its plan and determination to acquire the desired coal, plaintiff sought to induce bondholders to force a sale of respondent's property under the deed of trust, but the bondholders declined to take that course; that after the plaintiff purchased the judgments aforesaid, at a small part of their face value as respondent is informed, a representative of the plaintiff promptly inquired of respondent if it was ready to execute a lease on the 72 acres of coal at the price of five cents per ton,

the royalty to be applied first in payment and discharge of the three judgments, and being advised by respondent that a lease for five-cent royalty would not be made, respondent was informed that this suit to enforce the lien of the judgments would be promptly instituted, and that two days later the suit was instituted; that this course of conduct of the plaintiff from the beginning has been actuated by improper motives; that such conduct is unfair and inequitable, and therefore plaintiff's suit should not be entertained in a court of equity.

The clean-hands maxim is sometimes thus stated: "He that hath committed iniquity shall not have equity." Iniquity involves absence of, or deviation from, just dealing. It negatives the existence of uprightness, and means that there has been substituted therefor gross injustice, wickedness. Where a litigant's conduct can properly be thus characterized, it is termed unconscionable and, if such conduct has transpired in connection with the immediate subject matter of the suit, equity will close its doors against the party thus tainted. It is said on high authority that any really unconscientious conduct, connected with the immediate controversy, will repel the suitor. 1 Pomeroy's Equity Jur., section 404.

By the standards and definitions thus set forth, there must be evaluation of the plaintiff's conduct as alleged in the answer. Was that alleged conduct so iniquitous that equity will not permit the plaintiff to prosecute this suit? The trial chancellor answered negatively by his action in sustaining the plaintiff's demurrer to the Adrian Fuel Company's answer. We have no alternative but to approve the chancellor's holding in this particular.

Though courts of equity are properly denominated courts of conscience, their field of function is solely in respect of matters liable to trial in a court of justice— justiciable questions. It is beyond the province of a court of equity to say of a debtor that he is too obdurate, that according to high standards of ethics and propriety he should not with overmuch zeal oppose the subjecting of his property to the payment of his debt. Nor may equity

with delicate skill and precision weigh the zealousness of a creditor seeking to collect a debt. On occasion, a disinterested observer, whether a chancellor or not, may be impressed that a creditor is dealing over-vigorously with a debtor. There is a classic example of a creditor who demanded his pound of flesh. But a sociological appraisement of such matters may not be made by legalistic formula.

In the course of conduct attributed by the respondent to the plaintiff no unlawful thing has been done. There is difficulty in perceiving how a series of lawful acts can culminate in such unconscionable conduct as to preclude the lawful actor from enforcing a lien in a court of equity.

For the reasons stated we affirm the rulings of the trial chancellor respecting both the bill and the answer.

The costs in this court will be assessed as is usual in certified cases. The manner of taxation of the ultimate costs in the trial court shall, of course, await the event. *Traugh* v. *Hart,* 113 W. Va. 388, 168 S. E. 137; *Lay* v. *Phillips,* 116 W. Va. 60, 178 S. E. 523.

*Affirmed.*