In the Matter of NATCHEZ CORPORATION OF WEST VIRGINIA, Debtor.

Betty LILLY, Appellant Cross–Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as manager of FSLIC Resolution Fund as receiver for Twin City Savings FSA, Appellee Cross–Appellant.

No. 90–3918.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1992.

Douglas Scott Draper, Friend, Wilson & Draper, New Orleans, La., for appellant cross-appellee.

Jennifer N. Taylor, Charleston, W.Va., for Betty Lilly.

Mark Samuel Goldstein, Dennis Stewart Mann, Howard, Laudumiey, Mann, Pedersen & Goldstein, New Orleans, La., for appellee cross-appellant.

Before KING, JOHNSON and DAVIS, Circuit Judges.

KING, Circuit Judge:

Betty Lilly appeals from an order of the district court affirming the bankruptcy court's finding that she had violated the 11 U.S.C. § 362 automatic stay of actions against property of the bankruptcy estate of Natchez Corporation. Lilly also appeals from a finding of the district court that the bankruptcy court had jurisdiction to hear the case and that the Federal Deposit Insurance Corporation, as receiver for Twin City Savings, F.S.A., has standing to avoid her actions taken post-petition to perfect her title to the property. Because we find that the FDIC does not have standing to avoid a post-petition transfer of the debtor's property, we reverse the judgment below.

I. STATEMENT OF THE CASE

On November 30, 1983, Glade Springs, Inc. filed a chapter 11 petition for relief in the United States Bankruptcy Court for the Eastern District of Tennessee. On September 4, 1984, Glade Springs sold the property known as Glade Springs Resort, located in Raleigh, West Virginia, to Longboat Development Corporation ("Longboat"), d/b/a Sutton Road Company. On September 6,

1984, Longboat sold the property to Natchez Corporation ("Natchez"). On September 17, 1984, the Tennessee bankruptcy court issued an order approving the sale of the Glade Springs property "free and clear of the liens or the interests of the Raleigh County Sheriff and Treasurer, including but not limited to, the unpaid real estate taxes for 1983 and 1984...."

Two years later, on November 17, 1986, pursuant to West Virginia Code § 11A-3-1 *et seq.*, the Sheriff of Raleigh County sold to appellant, Betty Lilly, 492.14 acres (the "Property") of the Glade Springs property, for the 1985 taxes owed. On October 7, 1987, Natchez filed a petition for relief under chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Eastern District of Louisiana. The case was converted to one under chapter 7 on May 23, 1989.

In December of 1987, pursuant to West Virginia Code § 11A-3-20, Lilly filed with the Raleigh County Clerk of Court a Report which included a survey of the Property and a list of those entities to be served with a Notice to Redeem. The list indicated that a Notice to Redeem was to be sent to the Bankruptcy Court for the Eastern District of Louisiana and listed Natchez's bankruptcy case number.

The Clerk of Court issued the Notice to Redeem on January 21, 1988.[1] Notice was sent to, among others, the Louisiana bankruptcy court, Natchez, and Liberty Trust, predecessor in interest to Twin City Savings, F.S.A. ("Twin City"). After receiving the Notice, Natchez informed the Raleigh County Clerk of the bankruptcy proceeding. As a result, the Clerk refused to issue the deed for the Property to Lilly. On September 29, 1988, Lilly filed an action in West Virginia state court seeking to force the Clerk to issue the deed.

The FDIC, as manager of the FSLIC Resolution Fund, is the receiver for Twin City, which had made a $10.2 million loan to Natchez secured by a deed of trust on the Glade Springs property. On April 12, 1989, the Louisiana bankruptcy court lifted the automatic stay, allowing the FDIC to foreclose on its interest in the Property. The FDIC subsequently sold the surface rights to the Property for $2.85 million to an entity who is not a party to this suit. The mineral rights remained part of the estate.

On May 31, 1989, the bankruptcy court issued an order lifting the stay so that Floyd Sayre, another tax purchaser, could proceed with his state court action to acquire title to the portion of the Glade Springs property he had purchased. This order mistakenly included Lilly in its provisions. Recognizing its error, on November 21, 1989, the bankruptcy court rescinded the order insofar as it referred to Lilly. Lilly never formally applied for relief from the stay, nor has she been granted such relief.

On September 19, 1989, the FDIC filed an adversary proceeding seeking declaratory and injunctive relief against Lilly. The complaint alleged that Lilly's acts of filing the Report with the Clerk of Court and causing the Clerk to issue a Notice to Redeem violated the automatic stay imposed by § 362 of the Bankruptcy Code, and asked that these acts be declared void by the bankruptcy court. The complaint also alleged that Lilly violated the stay when she brought a state court action seeking to force the Clerk to issue the deed, and requested that the bankruptcy court enjoin the state court suit. Finally, the FDIC sought contempt sanctions for these alleged willful violations of the stay. The bankruptcy court found that the FDIC had standing to bring suit, held that all of Lilly's actions had violated the stay, and voided her actions to perfect title to the Property. The bankruptcy court also granted the FDIC's request for contempt sanctions against Lilly for her willful violation of the stay.

Lilly appealed this judgment to the district court. The district court held that the FDIC had standing, and affirmed the bank-

---

1. Under West Virginia Code § 11A-3-23, Natchez was given until March 31, 1988 to redeem the Property. *See infra* note 3.

ruptcy court's ruling declaring Lilly's actions null and void as violations of the automatic stay. However, the district court reversed the bankruptcy court as to the contempt sanctions against Lilly for willful violation of the stay. *Lilly v. FDIC*, No. 90–2238, 1990 WL 199281, 1990 U.S. Dist. LEXIS 16477 (E.D.La. Nov. 30, 1990).

Lilly now appeals to this court, contending that the bankruptcy court lacked jurisdiction over this action [2] and that the FDIC had no standing to avoid her actions allegedly taken in violation of the automatic stay. The FDIC argues on appeal that the district court incorrectly reversed the bankruptcy court's award of contempt sanctions. We will address these issues in turn.

## II. DISCUSSION

Lilly contends that her actions to perfect her tax sale title to the Property—filing the Report with the Clerk of Court, causing the Notice to Redeem to issue, and filing the state lawsuit—should not be invalidated as violative of the automatic stay. While the parties have extensively briefed the issue of whether Lilly's actions violated the stay pursuant to 11 U.S.C. § 362, the remedy sought by the FDIC, the invalidation of Lilly's actions, is governed by 11 U.S.C. § 549, which provides for the avoidance by the trustee of unauthorized post-petition transfers of property. We are therefore confronted at the outset with the question of whether the FDIC, a creditor of Natchez, has standing to bring this action against Lilly. Section 549 provides, in relevant part:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and ...

(2)(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). The Code construes the term "transfer" broadly. " '[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54).

■ While the tax sale occurred prior to Natchez's bankruptcy, the first two actions taken by Lilly complained of here—filing the Report and causing the Notice to Redeem to issue—occurred post-petition. As both the bankruptcy court and district court properly noted, under West Virginia law, these acts were required for Lilly to obtain full title to the Property. W.Va. Code § 11A–3–20. After October 31st of the year following the tax sale, and by December 31st of that year, the purchaser at a tax sale must examine the title, file a report and survey, and prepare a list of those parties to whom the notice to redeem must be sent. *Id.* Failure to perform these acts divests the purchaser of all benefits of the purchase. *Id.* Indeed, a mere purchaser is not even vested with a lien on the property. The only right existing after the tax sale is the right of the purchaser to receive a deed upon fulfillment of the statutory requirements. *Todd Coal Co. v. Adrian Fuel Co.*, 121 W.Va. 138, 1 S.E.2d 873 (1939). West Virginia courts have held that the owner of land sold at a tax sale cannot be deprived of his land unless the procedures prescribed in § 11A–3–20 are strictly followed. Moreover, a tax deed will not be effective unless these procedures are followed to the letter. *State ex rel. Morgan v. Miller*, 177 W.Va. 97, 350 S.E.2d 724 (1986); *Shaffer v. Mareve Oil Corp.*, 157 W.Va. 816, 204 S.E.2d 404, 409 (1974); *Koontz v. Ball*, 96 W.Va. 117, 119, 122 S.E. 461, 463 (1924).

These two acts—filing the Report and causing the Notice to Redeem to issue— were clearly necessary to complete the transfer of title to the Property from

---

2. Because we dispose of this case on grounds of standing, we need not address the jurisdictional and question whether the FDIC's action to avoid Lilly's post-petition acts to perfect title in the

Property constitutes a core proceeding in the peculiar situation where the Property was no longer property of the estate at the time the FDIC's complaint was filed.

Natchez to Lilly. Therefore, while the tax sale occurred prior to the filing of the Natchez petition, the statutorily mandated follow-up acts that perfected the transfer occurred subsequent to the petition date. The transfer was therefore "completed" post-petition. *See* 11 U.S.C. § 101(54).[3]

The third act by Lilly of which the FDIC complains is her state court lawsuit. Lilly filed an action in state court, subsequent to the Natchez petition, which sought to compel the Raleigh County Clerk of Court to release to Lilly the deed to the Property. This action by Lilly, like those discussed above, was intended to effectuate the post-petition transfer of the Property from Natchez to Lilly.

■ Section 549 specifies that "the *trustee* may avoid" a post-petition transfer; it does not on its face permit a creditor, such as the FDIC, to avoid such a transfer. We held in *In re Pointer*, however, that only a trustee or debtor-in-possession has standing to utilize the avoidance powers in § 549. *See In re Pointer*, 952 F.2d 82, 88 (5th Cir.1992); *In re Ciavarella*, 28 B.R. 823, 825 (Bankr.S.D.N.Y.1983) (plain language of the Code mandates that only a trustee or debtor-in-possession, not a creditor, is authorized to invoke §§ 549 and 547); *see also Nebraska State Bank v. Jones*, 846 F.2d 477, 478 (8th Cir.1988) (single creditor cannot bring action to avoid fraudulent conveyance); *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 860 (10th Cir.1986) (only a trustee can maintain post-bankruptcy action to avoid preference); *In re Bacher*, 47 B.R. 825, 829 (Bankr.E.D.Pa.1985) (only trustee has standing to utilize § 548, not creditor); *In re Van Brock*, 33 B.R.

546 (Bankr.S.D.Fla.1983) (cause of action under § 548 can only be asserted by trustee or debtor-in-possession, not creditor); *see also In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275–76 (5th Cir.1983) ("A trustee acting under section 544 acts as a representative of creditors, and any property recovered is returned to the estate for the eventual benefit of *all* creditors.... Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with th[e] estate and with the equitable distribution scheme....") (citations omitted). While the actions taken by Lilly may indeed have violated the stay,[4] the FDIC, a creditor of the Natchez estate, simply does not have standing to avoid this type of alleged stay violation.

Our holding does not foreclose a creditor from ever invoking § 549. A creditor may do so on behalf of the trustee or debtor-in-possession if it has moved the bankruptcy court for authorization to do so and has shown appropriate circumstances which would permit such action. *See In re Pointer*, 952 F.2d at 88–89; *see also In re Munoz*, 111 B.R. 928, 931 (D.Colo.1990); *In re Savino Oil & Heating Co.*, 91 B.R. 655, 656–57 (Bankr.E.D.N.Y.1988). The FDIC has not moved the bankruptcy court for authorization to act on behalf of the trustee in this matter. The FDIC therefore has no standing to invalidate Lilly's post-petition actions to perfect her tax sale title to the Property.[5]

## III. CONCLUSION

Because the FDIC lacked standing to avoid Lilly's actions taken to effect the

---

3. These two actions taken by Lilly constituted a post-petition transfer in another way. Assuming the validity of the tax sale (with regard to which we make no determination), on the date Natchez filed for bankruptcy, it retained its right of redemption as property of the estate until March 31, 1988. Pursuant to 11 U.S.C. § 108(b), Natchez could have cured its default before March 31, 1988, which was the latter of (1) the end of the redemption period or (2) sixty days after the order for relief. Lilly's actions to perfect her tax sale title essentially removed from the Natchez estate its right to redeem the property, and therefore constituted a post-petition transfer of property of the estate.

4. This court has noted that a transfer made in violation of the stay may constitute an unauthorized post-petition transfer which may be avoided by the trustee under § 549. *In re Pointer*, 952 F.2d at 87 n. 8; *In re Missionary Baptist Found. of Am., Inc.*, 796 F.2d 752, 764 (5th Cir.1986).

5. Because the FDIC lacked standing to avoid Lilly's acts to transfer property of the Natchez estate post-petition, it also lacked standing to seek contempt sanctions for Lilly's alleged willful violations of the stay.

post-petition transfer of Natchez property, we REVERSE the judgment below and RE-MAND to the district court and ultimately to the bankruptcy court with instructions to dismiss the complaint of the FDIC.

REVERSED and REMANDED.

