In the Matter of HOMESTEAD PARTNERS, LTD., Debtor.

CONDOR ONE, INC., Movant,

v.

HOMESTEAD PARTNERS, LTD., Respondent.

Bankruptcy No. A95–76964–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 29, 1996.

John A. Christy, Schreeder, Wheeler & Flint, Atlanta, GA, for Debtor.

Sarah Robinson Borders, Darryl S. Laddin, King & Spalding, Atlanta, GA, for Condor One, Inc.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this proceeding is a "Motion for Reconsideration of

Order" by Condor One, Inc. (hereinafter "Condor" or "the Creditor"). Brought pursuant to Federal Rule of Civil Procedure 59(e) and Bankruptcy Rule 9023, this motion seeks reconsideration of an Order dated September 6, 1996, wherein the Court disallowed Condor's claim against the estate of Homestead Partners, Inc. (hereinafter "the Debtor") to the extent that it sought the recovery of $1,210,228.93 in post-petition attorney's fees. *See In re Homestead Partners, Ltd.*, 200 B.R. 274 (Bankr.N.D.Ga.1996). This matter constitutes a core proceeding within the Court's subject matter jurisdiction, *see* 28 U.S.C. 157(b)(2)(A) & (B), and it shall be disposed of in accordance with the following reasoning.

### Background

At all times relevant to this proceeding, Condor has held a first priority mortgage on the Debtor's principal asset, a three-hundred unit apartment complex in Clarkston, Georgia. When the Debtor fell into default on this mortgage obligation shortly before filing for Chapter 11 protection, Condor issued an October 26, 1995 notice of its election to accelerate the indebtedness and to enforce its state law right to attorney's fees. As prescribed by statute, this demand letter informed the Debtor that liability for such attorney's fees could be avoided by paying the entire indebtedness within ten days thereafter.[1] No such payment was tendered by the Debtor and, on November 29, 1995,

---

1. Condor sent this letter of notice pursuant to O.C.G.A. § 13–1–11, which governs the recoverability of attorney's fees with the following provision:

   (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

   (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;

   (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00;

   (3) The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party to be held on said obligation has ten days from the receipt of said notice to pay the principal and interest without the attorney's fees. If

Condor obtained the appointment of a receiver over the Debtor's affairs. The Debtor filed a Chapter 11 petition the next day, commencing the present bankruptcy case and cutting short Condor's efforts at collection.

Condor then filed a proof of claim in the Debtor's bankruptcy case of roughly $13,-312,268.26. Approximately $1,210,228.93 of that claimed amount was said by Condor to represent an entitlement to attorney's fees under Georgia law.[2] Rather than bearing any relationship to legal work actually performed by Condor's counsel, however, the $1,210,228.93 fee claim merely arose from percentage-based guidelines found within the Georgia Code.

The Debtor filed an Objection to Proof of Claim challenging, inter alia, the recoverability of any such $1,210,228.93 fee claim by Condor. Contending that pre-filing compliance with O.C.G.A. § 13–1–11 never should give rise to an unreviewable and unavoidable fee entitlement in bankruptcy, the Debtor first argued that Bankruptcy Code section 506(b) preempts any such state law right to fees and deems only oversecured creditors to be eligible for post-petition attorney's fees. As such, the Debtor reasoned that the Bankruptcy Code's own terms should prohibit the allowance of any statutory claim for fees by Condor, a less than fully secured creditor.

Even, however, if section 506(b) were found not to bar the recovery of post-petition fees on an unsecured basis, the Debtor still contended that the facts of this case warranted disallowance of Condor's $1,210,228.93 fee claim. Specifically, the Debtor argued, by mailing the ten-day letter that perfected its statutory fee claim, the Creditor perpetrated

a preferential transfer and/or a fraudulent conveyance that could be avoided in bankruptcy pursuant to 11 U.S.C. §§ 547(b) and 548. Thus, notwithstanding whether the Bankruptcy Code permitted the recovery of post-petition fees by undersecured creditors as a general matter, the Debtor contended that the facts of this case warranted the disallowance of Condor's $1,210,228.93 fee claim.

The Court scheduled a hearing on the Debtor's objection, and thereafter provided each party an extensive opportunity to brief the issues therein raised. Despite the breadth of opportunity given for argument, Condor limited the focus of its responsive briefs exclusively to the preliminary issue of whether Code section 506(b) pre-empted recovery of attorney's fee claims on an unsecured basis. As to the perfection-begetting ten-day letter's avoidability, the Creditor merely advanced a blank assertion that "[c]learly, the requirements of neither section 547 nor section 548 of the Bankruptcy Code have been satisfied." (Mem.L.Resp. Obj. at 10).

Through an Order dated September 6, 1996, the Court noted that Bankruptcy Code section 502 conceivably might be read to allow unsecured claims for post-petition attorney's fees by creditors who would be ineligible for fee recovery under section 506(b). *See In re Homestead Partners Ltd.*, 200 B.R. 274, 276–77 (Bankr.N.D.Ga.1996) (citing *In re 268 Ltd.*, 789 F.2d 674, 678 (9th Cir.1986); *In re Martin*, 761 F.2d 1163, 1168 (6th Cir. 1985); *United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society of the United States (In re United Merchants & Manufacturers, Inc.)*, 674 F.2d 134, 138 (2d Cir.1982); *Liberty Nat'l Bank & Trust Co. of*

---

the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.
O.C.G.A. § 13–1–11 (1982). Both parties agree that, by sending the letter and otherwise complying with the provisions of section 13–1–11, Condor obtained a valid and enforceable right to attorney's fees under Georgia law.

**2.** Of the remaining funds claimed by the mortgagee, $9,818,850.66 reflected principal indebtedness and $2,337,196.34 corresponded to interest and penalties that had accrued before the petition date.

*Louisville v. George,* 70 B.R. 312, 316–17 (W.D.Ky.1987); *Marine Midland Bank, N.A. v. Ladycliff College (In re Ladycliff College),* 56 B.R. 765, 769 (S.D.N.Y.1985); *In re Holywell Corp.,* 68 B.R. 134, 136 (Bankr.S.D.Fla. 1986); *In re Ely,* 28 B.R. 488, 491 (Bankr. E.D.Tenn.1983)). Nevertheless, assuming arguendo that post-petition fees so might be recouped by undersecured creditors under § 502, the Court found that such a conclusion would "not lead to . . . a recovery in the instant case, for Condor's act of perfecting its state law right to fees constituted a preference subject to avoidance in bankruptcy under 11 U.S.C. § 547(b)." *Id.* at 277–78.

In the wake of that ruling, Condor now has timely filed a Motion for Reconsideration, arguing that the ten-day letter which perfected its statutory right to attorney's fees does not meet the criteria for a preferential transfer. In particular, the Creditor asserts that no "transfer" was effected by that statutorily prescribed mailing, as required by section 547(b); that the letter did not come on account of any "antecedent debt," as contemplated by section 547(b)(2); and that the mailing did not pave the way for any recovery greater than that which it would receive under Chapter 7 liquidation, as demanded by section 547(b)(5). *See* 11 U.S.C. §§ 101(54), 547(b)(2) & (5). The Debtor has responded with a challenge to both the procedural appropriateness and the substantive accuracy of Condor's Motion for Reconsideration of Order.

### Discussion

**I. The Standard for Reconsideration and Condor's Failure to Present New Evidence or Case Law Justifying the Relief Sought.**

█ Federal Rule of Civil Procedure 59(e) grants bankruptcy courts license to reconsider orders and judgments after their entry. *See* Fed.R.Civ.P. 59(e) (made applicable in bankruptcy by Fed.R.Bankr.P. 9023); *see also* Fed.R.Bankr.P. 9002 (references, like that of Federal Rule of Civil Procedure 59(e), to the alteration or amendment of a

"judgment" shall be read to include reconsideration of any order appealable to an appellate court); *see also NationsBank v. Blier (In re Creative Goldsmiths),* 178 B.R. 87, 90–91 (Bankr.D.Md.1995) (applying Rule 59(e) in bankruptcy). Understandably, however, the goal of this provision is limited to the correction of any manifest errors of law or misapprehension of fact. *See Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993); *Lux v. Spotswood Constr. Loans,* 176 B.R. 416, 420 (E.D.Va.), *aff'd,* 43 F.3d 1467 (4th Cir. 1994).

> [This Rule is] not designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor [is it] aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment, can be later advanced.

*See In re DEF Inv., Inc.,* 186 B.R. 671, 680–81 (Bankr.D.Minn.1995) (citing *Bannister v. Armontrout,* 4 F.3d 1434, 1440 (8th Cir. 1993)); *see also Concordia College Corp. v. W.R. Grace,* 999 F.2d 326, 330 (8th Cir.1993), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994); *Fed. Deposit Ins. Corp. v. World Univ., Inc.,* 978 F.2d 10, 16 (1st Cir.1992); *Dale & Selby Superette & Deli v. Dep't of Agric.,* 838 F.Supp. 1346, 1348 (D.Minn.1993); *DeGidio v. Pung,* 125 F.R.D. 503, 505 (D.Minn.1989). Attempts to take a "second bite at the apple," to introduce new legal theories, or to pad the record for an appeal, constitute an abuse of the Rule 59(e) motion which the Court normally will not condone. *See id.* Thus, the Court will grant a Rule 59(e) motion only under extraordinary circumstances, such as a change in the law or the facts upon which it based its decision. *See Wilson v. Runyon,* 981 F.2d 987, 989 (8th Cir.1992), *cert. denied,* 508 U.S. 975, 113 S.Ct. 2968, 125 L.Ed.2d 668 (1993); *Dale & Selby,* 838 F.Supp. at 1347–48.

█ In the instant case, Condor has not produced any previously unavailable case law or evidence which might warrant reconsider-

ation from the Court.[3] Rather, having passed up the chance to contest the applicability of section 547(b)'s preference standards before the entry of the dispositive Order, the Creditor appears to call upon Rule 59(e) as a vehicle for reviving its lost opportunity after suffering a ruling against its interests.[4] Rule 59(e), however, is not to be used for the advancement of arguments that should and could have been made prior to an Order's entry. *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir.1993) (litigants may "not use a Rule 59(e) motion to introduce new evidence that could have been adduced [earlier, or] as the occasion to tender new legal theories for the first time"); *California Union Ins. Co. v. Liberty Mutual Ins. Co.*, 930 F.Supp. 317, 317–18 (N.D.Ill. 1996); *DeWit v. Firstar Corp.*, 904 F.Supp. 1476, 1495 (N.D.Iowa 1995). The Court's decisions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Lester v. Brown*, 1995 WL 447764, No. 93–C–7481 at *1 (N.D.Ill. July 26, 1995). Nor should Rule 59(e) be viewed as a means for overcoming one's failure to litigate matters fully. *All West Pet Supply Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.*, 847 F.Supp. 858, 860 (D.Kan.1994) ("[a] party's failure to

present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend"); *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 977 (Bankr.N.D.Ill. 1990) (second bites are not the function of Rule 59(e)). To the extent that it harbors such an effort, calculated from hindsight without the benefit of any new case law or evidence that could not have been presented earlier, Condor's Motion for Reconsideration falls outside the permissible scope of a Rule 59(e) Motion, and it must be denied as such.

## II. Notwithstanding Condor's Assertions, the Mailing of a "Ten–Day" Letter Perfected its Transfer Under the Mortgage Relating to Attorney's Fees, and a Preference Consequentially Took Place at that Time.

■ Aside from its procedural shortcomings, however, the Court also finds Condor's Motion for Reconsideration to bear a flawed logic that independently must result in its denial. As previously noted, in order to support its claim that the ten-day letter mailed did not give rise to a preference under the Bankruptcy Code,[5] Condor variously argues that no "transfer" was created by the statu-

---

3. Acting on the assumption that Condor might have some basis of newly discovered evidence upon which to found its Motion, the Court agreed to schedule an evidentiary hearing for the consideration of those issues. Condor subsequently requested that this hearing be removed from the Court's calendar, in its place submitting a list of facts stipulated to by it and the Debtor. (Hearing Stipulations, ¶¶ 1–21). Rather than adducing previously undiscoverable matters, however, these stipulations merely related to facts known and available to both parties prior to the Court's September 6th decision. As such, in weighing the matters before it, the Court must conclude that Condor's Motion for Reconsideration lacks the support of any evidence sufficient to warrant reconsideration. *Cf. Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir.1991) (citing *DeLong Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135 (3d Cir.1980) (parties may not justify reconsideration merely through the submission of previously available evidence)).

4. The Debtor, of course, bore the initial burden of establishing that each of section 547(b)'s criteria had been satisfied in this case. *See e.g., Adler v. Cvitanovich (In re Nat'l Seafood Exch., Inc.)*,

1995 WL 258303, No. 93–1412 at *2 (E.D.La. Apr. 27, 1995); *Anderson–Smith & Assoc., Inc. v. Xyplex, Inc. (In re Anderson–Smith & Assoc., Inc.)*, 188 B.R. 679, 685 (Bankr.N.D.Ala.1995). This burden, however, should not be confused with Condor's present obligation as movant for reconsideration to produce some cognizable basis for the relief that its seeks. *See generally* 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (1995) (discussing the burden that a rule 59(e) movant must carry and the various showings which might warrant reconsideration).

5. The Bankruptcy Code defines an avoidably preferential transfer as:

       *    *    *    *    *    *

    any transfer of an interest of the debtor in property—
      (1) to or for the benefit of a creditor;
      (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
      (3) made while the debtor was insolvent;
      (4) made—
      (A) on or within 90 days before the date of the filing of the petition; or

torily-prescribed mailing, that any effective transfer would not have come on account of an antecedent debt, and that its mailing of the ten-day letter did not result in it receiving any more than would be distributed under a Chapter 7 liquidation in the letter's absence. Contrary to the Creditors assertions, however, the facts underlying this case and the precepts of governing case law reveal each of these prerequisites to be met, as the following analysis reveals.

### A. The Existence and Timing of a "Transfer"—

In its Motion to Reconsider, Condor argues that the ten-day letter here at issue could not constitute a preference because it merely created an "obligation of payment" and not a "transfer of an interest in property." *See* 11 U.S.C. § 547(b) (providing for the avoidance of "transfers" under certain circumstances); *see also* 11 U.S.C. § 101(54) (defining "transfer" to mean "[a]ny mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with *an interest in property*"). Essentially, through this distinction, the Creditor seeks to re-characterize the proprietary impact of the ten-day letter, and thereby place it outside the scope of section 547(b)'s avoidance provisions. This argument, however, ignores the legal conclusion reached by the Court in its original Order, wherein the ten-day letter was deemed a preference because it caused the perfection of a preceding transfer of "an interest in property," i.e., the lien securing Condor's statutory right to attorney's fees. *Homestead,* 200 B.R. at 278–79.

Certainly, it would offend reason for Condor to have included an attorney's fee provision in its mortgage, extending the collateralization of its loan to an O.C.G.A. § 13–1–11

claim, yet subsequently to contend that the perfection of its attorney's fee rights did not relate to any "transfer of property." Indeed, given the rooting of the attorney's fee provision within the text of a mortgage agreement, a "transfer of an interest in property" must have taken place with respect to the fee provision at some point in time. The crucial question at this juncture, therefore, is when did that "transfer of an interest in property" take place for the purposes of the Code's preference section?

On this point, Bankruptcy Code Section 547(e) unequivocally directs that a transfer occurs for preference recovery purposes "at the time such transfer is perfected." 11 U.S.C. § 547(e). In the case of transfers relating to real property, the Code goes on to provide that a transfer is "perfected" when "a bona fide purchaser of such property from the debtor ... cannot acquire an interest that is superior." 11 U.S.C. § 547(e)(1)(A). In the instant case, resolving whether the ten-day letter accomplished a perfection of a property transfer and, therefore, whether it should be deemed the point of that transfer for preference purposes, essentially turns on whether a BFP purchasing before the mailing of the ten-day letter would be subordinated to its terms. This inquiry can best be understood through the following hypothetical:

> Suppose that, prior to any ten-day letter being sent, the Debtor had chosen to sell its single asset to a third-party BFP and that Condor had no notice of the sale until after if had been closed and recorded. Noting that unauthorized sale of the collateral constituted an event of default under its loan, Condor then sent the Debtor a notice which accelerated the main debt and included a "ten-day" letter within its terms. Assuming that the Debtor thereafter produced no payment, would Condor

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

have the right to defeat the BFP's claim to the realty, not only as to the entirety of its loan and interest outstanding thereupon, but also as to the 15% attorney's fee penalty created by O.C.G.A. § 13–1–11?

Based upon the statements of Georgia courts that previously have undertaken an interpretation of O.C.G.A. § 13–1–11, the Court can only conclude that the mortgagee's claim for a percentage penalty would not be so elevated above the rights of a good faith purchaser for value. Rather, the lender would merely be permitted to claim priority up to the amount of its actual loan.

In reaching this conclusion, the Court relies upon that line of case law wherein Georgia courts have firmly established that a creditor's right to percentage-based recovery under O.C.G.A. § 13–1–11 is not "perfected" until mailing of statutory notice and expiration of the ten-day payment opportunity. See Bulman v. First Nat'l Bank of Chattooga County, 165 Ga.App. 843, 844, 303 S.E.2d 29 (1983); Woods v. State, 109 Ga.App. 225, 227–28, 136 S.E.2d 18 (1964). By employing the term of art "perfection," which describes an interest's ability to defeat outsiders, the courts of Georgia appear to have broadcast a clear suggestion of intent, under which they would be unlikely to find a good faith purchaser defeated by the creditor's lien for fees, without at least advance mailing of the prescribed letter and expiration of the resulting ten-day period prior to sale. Likewise, under the standards set forth by the Bankruptcy Code, no "transfer" relating to the Creditor's lien for attorney's fees consequently may be said to have occurred until the satisfaction of O.C.G.A. § 13–1–11's "perfection through notice" requirement.

Such a "protracted transfer," of course, is specifically contemplated by the terms of section 547(e), and may be found in other applications of section 101(54)'s "transfer" definition as well. See e.g., Ehring v. Western Community Moneycenter (In re Ehring), 91 B.R. 897, 899 (9th Cir. BAP 1988); Waldschmidt v. Chrysler Credit Corp. (In re Messenger), 166 B.R. 631, 634 (Bankr.M.D.Tenn.

1994) (perfection of right to payment under a security agreement is avoidable if it occurred within the 90–day preference period). As the Fifth Circuit noted when evaluating a statute based upon similar preconditions of notice for the perfection of a transferee's property interests:

> While the tax sale occurred prior to Natchez's bankruptcy, the first two actions taken by Lilly complained of here—filing the Report and causing the Notice to Redeem to issue—occurred post-petition.... [T]he purchaser at a tax sale must examine the title, file a report and survey, and prepare a list of those parties to whom the notice to redeem must be sent. [W.Va.Code. § 11A–3–20]. Failure to perform these acts divests the purchaser of all benefits of the purchase.... The only right existing after the tax sale is the right of the purchaser to receive a deed upon fulfillment of the statutory requirements. Todd Coal Co. v. Adrian Fuel Co., 121 W.Va. 138, 1 S.E.2d 873 (1939). West Virginia courts have held that the owner of land sold at a tax sale cannot be deprived of his land unless the procedures prescribed in § 11A–3–20 are strictly followed. Moreover, a tax deed will not be effective unless these procedures are followed to the letter. State ex rel. Morgan v. Miller, 177 W.Va. 97, 350 S.E.2d 724 (1986); Shaffer v. Mareve Oil Corp., 157 W.Va. 816, 204 S.E.2d 404, 409 (1974); Koontz v. Ball, 96 W.Va. 117, 119, 122 S.E. 461, 463 (1924).... These two acts—filing the Report and causing the Notice to Redeem to issue— were clearly necessary to complete the transfer of title to the Property from Natchez to Lilly. Therefore, while the tax sale occurred prior to the filing of the Natchez petition, the statutorily mandated follow-up acts that perfected the transfer occurred subsequent to the petition date. The transfer was therefore "completed" post-petition. See 11 U.S.C. § 101(54).

As in the case before the Matter of Natchez Corp., 953 F.2d 184 (5th Cir.1992) panel, the state statute here at issue has placed certain preconditions upon the perfection of those

rights associated with an O.C.G.A. § 13–1–11 attorney's fee lien.[6] To the extent, therefore, that Georgia law would not recognize any such lien as "perfected" absent the mailing of a ten-day letter, the Court likewise shall not consider the "transfer" to have been completed until that point in time.

### B. The Existence of an Antecedent Debt

In a fashion closely related to its argument based upon a transfer theory, Condor also contends that the ten-day letter did not come "on account of" any antecedent debt, but that it instead marked the incurrence of a new obligation independent of the mortgage debt. Based upon this interpretation, the Creditor reasons that no preferential transfer could have occurred when the letter was mailed in accordance with Georgia's statutory requirement.

Clearly, the Court need look no further than the state statute governing this entire attorney's fee process to see that the ten-day letter comes "on account of" the mortgage obligation. By definition, one must be an obligee on a pre-existing note or indebtedness before the fee provisions of that statute even come into play. *See* O.C.G.A. § 13–1–11. Moreover, the quantum of fees recoverable under the section remains entirely dependant upon the size of that prior debt obligation. In keeping with the stated premise of the statute to compensate a lender for the costs associated with collecting its pre-existing debt, in the absence of some prior obligation, the mere mailing of a ten-day letter under section 13–1–11 will not provide any basis for the assessment of attorney's fees, since there will be nothing upon which to fashion its percentage-based relief. *Id.* Certainly, therefore, there can be little doubt that a ten-day letter mailed pursuant to O.C.G.A. § 13–1–11 qualifies as an act taken "on account of" an antecedent debt for the purposes of Bankruptcy Code section 547(b)(2).

### C. The Extent to which the Transfer Enabled Condor to Receive More than It Would in a Chapter 7 Liquidation

Likewise, the Court must reject Condor's final argument, that the ten-day letter did not enable it to recover more than it otherwise would receive in a hypothetical Chapter 7 liquidation calculated without the benefit of the transfer at issue. In essence, Condor's suggestion on this point is that, since it already was undersecured at the time of the letter's mailing, and since the mortgage note was non-recourse in nature, the ten-day letter did not provide it with any additional basis for recovery beyond that derived from

---

**6.** Also as in the *Natchez* case, the Court finds a separate basis for concluding that a "transfer" occurred, given the ten-day letter's effect of foreclosing certain procedurally redemptive rights held by the Debtor. As the Court therein reasoned,

> These two actions taken by Lilly constituted a post-petition transfer in another way. Assuming the validity of the tax sale (with regard to which we make no determination), on the date Natchez filed for bankruptcy, it retained its right of redemption as property of the estate until March 31, 1988. . . . Natchez could have cured its default before March 31, 1988. . . . Lilly's actions to perfect her tax sale title essentially removed from the Natchez estate its right to redeem the property, and therefore constituted a post-petition transfer of property of the estate.

*Id.* at 187 n. 3. As a mechanism which foreclosed a proprietary right of redemption enjoyed by the debtor in that case, the creditor's notice-providing measures consequently were said to create a "transfer," irrespective of the manner in which they accomplished a perfection of the creditor's own interest. *Id.*

Likewise, in the instant case, section 13–1–11 served the dual purpose of erecting a pre-condition to the perfection of Condor's attorney's fee interest and of creating a right of redemption on the Debtor's behalf. *See* O.C.G.A. § 13–1–11. Similarly, mailing of the ten-day letter and expiration of the associated time period satisfied the section's perfection-related requirements and also caused the right of redemption thereunder to expire, extinguishing the Debtor's proprietary right to avoid the assessment of percentage-based fees. That said, independent of its lien-perfecting function, this mailing must be viewed as having effected a "transfer," in that the Debtor's proprietary right to "redeem" the note, and thereby to avoid all such attorney's fee liability, was removed from the estate in the process. *See id.*

a Chapter 7 liquidation before the transfer occurred.

This argument contradicts both the terms of the Code and basic reason. Granted, in a hypothetical Chapter 7 liquidation, a non-recourse lender such as Condor would find itself limited to a recovery based upon the value of its collateral. That calculation, however, merely serves to establish the reference point for section 547(b)(5)'s application. Having so calculated the amount distributed under a hypothetical liquidation, the Court must then turn to the actual facts of the case before it and determine whether the transfer at issue has paved the way for some greater recovery. *See* 11 U.S.C. § 547(b)(5) (requiring courts to compare the recovery that a given transfer actually makes possible with that amount to be distributed in a hypothetical Chapter 7 case).

In this respect, the fact that the Debtor has positioned itself in a Chapter 11 reorganization becomes the determinative link in the "hypothetical creditor test" of section

547(b)(5). Due to section 1111(b)'s election provision, Condor has the opportunity to assert the entirety of its claim against the Debtor, notwithstanding any non-recourse status on its part. *See* 11 U.S.C. § 1111(b)(1)(A) ("[a] claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse....") Consequently, to the extent that mailing of the statutory attorney's fee letter created an additional $1.2 million deficiency claim against the subject property, the terms of the Bankruptcy Code will permit that right of payment to be asserted in Chapter 11 as if it were a recourse obligation.[7] As a right of payment above and beyond the mere foreclosure rights that would accompany the liquidation of its non-recourse claim, this deficiency-based claim for attorney's fees, therefore, falls within the betterment of position proscribed by section 547(b)(5).[8]

**7.** As the Second Circuit recently explained, Section 1111(b)

\*    \*    \*    \*    \*    \*

*implements* a general rule that a claim secured by a lien on property of the estate is to be treated as giving the lienholder recourse against the debtor, whether or not recourse exists under applicable non-bankruptcy law. *See In re PCH Assocs.*, 949 F.2d 585, 604 (2d Cir.1991); *In re DRW Property Co.*, 57 B.R. 987, 991 (Bankr.N.D.Tex.1986). The statute thereby puts the Chapter 11 debtor who wishes to retain collateral property in the same position as a person who purchased property "subject to" a mortgage lien would face in the nonbankruptcy context. Outside of bankruptcy, if the owner wanted to retain the property after the mortgage went into default it would either have to work out a satisfactory resolution of the mortgage with the lender or bid on the property at a public foreclosure sale. Section 1111(b) puts Chapter 11 debtors to the same choice of either paying off the debt or forfeiting the property, and thereby allows the debtor to retain the property and effectuate its reorganization, but without frustrating the lienholder's rights. By giving the lienholder recourse against the debtor personally for the amount of any deficiency, § 1111(b) provides the lienholder the benefit it would otherwise obtain from its nonrecourse loan bargain—i.e., either full payment (or at least a claim against

the estate for the full amount of the debt and the ability to vote on the plan to the extent of its claim), or the right to foreclose and bid on the property at public auction. *See In re Tampa Bay Assocs., Ltd.*, 864 F.2d 47, 49–50 (5th Cir.1989); *In re DRW Property Co.*, 57 B.R. at 990–91; 5 COLLIER ON BANKRUPTCY, supra, ¶ 1111.02[2], at 1111–31 to 1111–32.

*680 Fifth Ave. Assoc. v. Mut. Ben. Life Ins. Co. (In re 680 Fifth Ave Assoc.)*, 29 F.3d 95, 97–98 (2d Cir.1994).

**8.** Indeed, if as Condor suggests, the ten-day letter and resulting attorney's fee lien provided no basis for recovery and consequently harbored no independent value, then the Creditor doubtlessly would not have contested the disallowance of this component to its claim with so much fervor. So as to avoid any confusion on the point, however, one need only look to the Debtor's proposed plan of reorganization to see that Condor's deficiency claim in fact has significant value in this Chapter 11 case. As set forth by the Debtor and now pending creditor approval, that plan would pay Condor 12.5% of its total unsecured claim, despite the non-recourse nature of the Creditor's loan. (April 30, 1996 Tr. at 7–8). In view of this impending payment in pro-rata satisfaction of its unsecured claim, it offends reason for Condor to suggest that an additional deficiency lien, such as that created by the ten-day letter, would not enable it to receive more than might be received if the case were one under Chapter 7 and if the transfer had not taken place.

Thus, like its contentions based upon the existence of a "transfer" and the presence of action "on account of an antecedent debt," Condor's argument relating to the hypothetical creditor test of section 547(b)(5) fails to sustain critical scrutiny. All other bases for contest having consequently been dismissed, the Court finds no substantive justification to undercut its conclusion that Condor's mailing of the ten-day letter pursuant to O.C.G.A. § 13–1–11 constituted a preferential transfer.

### III. Accepting Condor's Assertions on the Preference Issue Still Would Result in an Avoidable Transfer.

■ As previously noted, Condor bases its argument for reconsideration largely upon a contention that the mailing of a statutory ten-day letter did not effect a transfer of an interest in property, but instead merely caused the Debtor to "incur a debt" for attorney's fees. (Sept. 24, 1996 Tr. at 8–9). Furthering its attempt to distinguish the two concepts, Condor notes that Bankruptcy Code section 548 provides for the avoidance of either "the transfer of an interest in property" or "any obligation incurred by the debtor," provided that the same was—

\* \* \* \* \* \*

made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation

\* \* \* \* \* \*

11 U.S.C. § 548(a). Thus, the Creditor reasons, a vehicle such as the section 13–1–11

letter, which merely results in the incurrence of a debt obligation, should not be viewed as an avoidably preferential transfer.[9]

In so attempting to distinguish the applicability of section 547's preference section, however, Condor has placed itself squarely within the jaws of an avoidable fraudulent conveyance. After all, the Creditor not only concedes, but argues that the Debtor "incurred an obligation of payment" as a consequence of the ten-day letter. (Mot.Rec. at 2). Moreover, Condor does not dispute that its mailing under O.C.G.A. section 13–1–11 came at a time when the Debtor was insolvent. (Sept. 24, 1996 Tr. at 10). Lastly, given the Creditor's concession that the debt at issue was "incurred" by virtue of its mailing, there can be no dispute that the Debtor received no reasonably equivalent value in return for that transaction. *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 770–71 (6th Cir.1995) (courts must determine the value given in return for a § 548 transfer or obligation at the point it is "incurred"); *Bustamante v. Johnson (In re McConnell)*, 934 F.2d 662, 665 (5th Cir.1991) (reasonableness of value measured at time of the transfer or obligation's inception); *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 466 (4th Cir.1990) (point for examining whether debtor-transferor received reasonably equivalent value is date that transfer or obligation arose). Thus, were it to accept Condor's arguments that the ten-day letter "only effected the incurrence of a debt," the Court nevertheless would find itself inexorably led to deem the attorney's fee letter still avoidable on fraudulent conveyance grounds.

### IV. Even if the Court Were to Ignore Sections 547 and 548, Reconsideration Still Would Not Be Appropriate—

■ Lastly, even if it were to turn a blind eye to the entirety of the Bankruptcy Code's avoidance provisions, the Court still would find disallowance of Condor's $1.2 million

---

**9.** If a "transfer of an interest in property" and "incurring an obligation" were the same, Condor notes, there would be no need for such a distinc-
tion within Code section 548. (Sept. 24, 1996 Tr. at 14).

**1024**

attorney's fee claim appropriate under these circumstances. As the Court noted in the text of its original decision,

> While deferring any ruling on the issue of unsecured claims for post-petition fees, the Court does note its belief that O.C.G.A. section 13–11–1 should not be read to provide an unqualified right to a percentage payment with no regard for the actual nature of such expenses or their corresponding reasonableness. To the contrary, if creditors may present claims for post-petition attorney's fees on an unsecured basis, it still remains within the Court's basic equitable power to review such fee requests and, to the extent that they are not reasonable, to order that the fees be disallowed. *See In re Keaton,* 182 B.R. 203, 209 (Bankr.E.D.Tenn.1995) (concluding that creditors may present unsecured claims for post-petition fees, yet noting the Court's inherent power to insure reasonableness). Such a conclusion appears uniquely warranted in the application of O.C.G.A. section 13–1–11, which licenses the recovery of a percentage-based claim for fees, even if no such attorney's fees in fact have been incurred. As several courts have noted and as the instant case demonstrates, section 13–1–11 of the Georgia Code offers an inequitable windfall in bankruptcy, since the right to payment derived thereunder does not depend upon the amount of work actually performed by counsel. *See United States v. Allen,* 699 F.2d 1117, 1123 (11th Cir. 1983); *In re Ridgewood Apartments of DeKalb County, Ltd.,* 174 B.R. 712, 719 (Bankr.S.D.Ohio 1994) (finding the application of O.C.G.A. § 13–1–11 to offend equity and raise questions of professionalism); [*In re*] *Centre Court* [*Apartments, Ltd.*], 85 B.R. [651] at 655 [Bankr.N.D.Ga.1988] ("federal courts have recognized that percentage fee assessments under O.C.G.A. § 13–1–11 are grossly disproportionate to

the amount of fees actually incurred and that they in fact provide a windfall to the creditor, at the expense of the other creditors or the equity interest holders"). As a tribunal of equity, the Court must strive to prevent such adverse effects by exercising its power of review over those applications and by disallowing the payment of fees not actually or reasonably incurred. *Keaton,* 182 B.R. at 209.

Thus, the Court flatly rejected the proposition that a creditor may present a percentage-based claim of the type implicated in this case without subjecting itself to some form of court-imposed reasonableness review. Consequently, if for no other reason than its lack of any relationship to actual and reasonable fees, Condor's claim to a *per se* entitlement to $1.2 million in attorney's fees must be denied, irrespective of the avoidability of the ten-day letter perfecting that interest.

### *Conclusion*

The Court having given the matter its careful consideration and found such an outcome to be warranted on the various and several grounds noted above, it hereby is **ORDERED** that "Motion for Reconsideration of Order" by Condor One, Inc. is **DENIED.**

**IT IS SO ORDERED.**